561 P.2d 461

STATE of New Mexico,
Plaintiff-Appellee,

v.

Stanley Deon MELTON,
Defendant-Appellant.

No. 10805.

Supreme Court of New Mexico.

March 1, 1977.

Pickard & Singleton, Sarah Michael Singleton, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Louis Valencia, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SOSA, Justice.

Defendant Stanley Melton was charged with the first-degree murder, felony murder, rape, aggravated sodomy and the kidnapping of Sarah L. Vineyard, and was convicted of all but the first-degree murder charge. He appeals.

On the night of February 5, 1975, defendant went drinking at two bars in Clovis, New Mexico. Between 10 p.m. and 2 a.m. he had between nine to thirteen beers. Witnesses testified that the defendant got quieter and more depressed as he drank, and was very drunk when he left the bar by himself. The victim was working as a clerk at Allsup's 7–11 store in Clovis. She was last seen by Officer Loften at approximate-

ly 1:45 a.m., the morning of February 6, 1975. At about 3 a.m. a customer entered the store, saw no one, observed blood on the floor, and called the police. The police arrived at about 3:17 a.m. At about 4:44 a.m. the victim's seminude body was discovered in the Clovis Memorial Hospital parking lot.

The police arrested the defendant at 2304 Axtell, the vacant house of his brother. At the jail defendant's boots and socks, which had blood on them, were taken from him. Defendant's briefs had blood on the outside of the fly, and on the inside fly had semen and fibers similar to the victim's gold slacks she wore that night.

The autopsy showed that the victim's skull was fractured; there were bruises on her face, head, chest, hip, lower back, and leg. Her liver was lacerated. Death was caused by the injuries to her head and liver, both caused by severe blows. The victim had a large amount of acid phosphatase in her vagina and a small amount in her rectum.

The police investigation found blood stains on the floor in Allsup's as well as a pair of gold slacks, shoes, and a woman's pair of briefs. Investigation of the trailer house rented by the defendant revealed an Allsup's jacket outside. A green throw rug taken from the trailer had type A blood on it and hair similar to the victim's head and pubic hair. A blue shirt found in the trailer had fibers similar to those of the gold slacks. A Levi jacket and a white baby blanket were found in the shower of the trailer, the former having traces of blood, hair similar to the victim's head hair, and fibers similar to those of the gold slacks, and the latter having blood, weak signs of acid phosphatase, and hair similar to the victim's pubic hair on it.

A neighbor living approximately five yards from the trailer heard a car come into the driveway at about 3 a.m., and then he saw the trailer lights go on. He dozed off, awoke hearing water running, and then heard a car leave. When the police arrived, the water was running in the shower. When the police arrived at the 2304 Axtell residence, they saw defendant's pick-up truck with the motor still running. From the truck they recovered a section of the seat covers and a white glove; both had type A blood on them. The glove also had a hair similar to the victim's head hair on it. From inside the residence the police recovered a section of foam-rubber padding and a mattress cover with type A blood on them. Both the victim and the defendant had type A blood. A throw rug in the living room had hair similar to the victim's head hair on it, and a white towel in the fireplace of the den had hair similar to the victim's pubic hair on it.

■ Defendant first argues that the refusal of the trial court to issue a subpoena for Dr. Thompson was reversible error. Defendant had talked to Dr. Thompson (but was never examined or tested) while Dr. Thompson, a forensic psychologist, was a staff member at the New Mexico State Hospital. Apparently defendant's counsel never discovered this fact until Tuesday, the second day of trial. Whereupon he discussed the defendant's case with Dr. Thompson, who agreed to run the standard series of psychometric tests on defendant and to interview him, which occurred from 2 a.m. to 6 a.m. Wednesday morning. That morning counsel listened to Dr. Thompson's results and advised the district attorney of Dr. Thompson's findings shortly before 8:30 a.m. At the beginning of the trial that day, defense counsel requested the trial court to issue a subpoena for Dr. Thompson. The district attorney objected on the basis of unfair surprise and pointed out his prior cooperation with defendant in three previous psychiatric examinations. The trial court refused to grant the subpoena, but it told defense counsel he could "make a tender on that." Counsel replied that he would wait until Dr. Thompson's report was finished. On Thursday defense requested the trial court to reconsider its ruling. Defense also submitted Dr. Thompson's completed report as an exhibit to show the basis of the proferred testimony of Dr. Thompson, which the trial court allowed. The trial court still refused to grant the motion for a subpoena, but it did give defense an

opportunity to present later in the trial some authorities to substantiate his position. Thereafter no other request was made for the court to reconsider its ruling and no further argument or authority was presented to the trial court. The defense did not make an offer of proof of what Dr. Thompson would testify to in order to preserve error. N.M.R.Evid. 103(a)(2) [§ 20–4–103(a)(2), N.M.S.A. 1953 (Supp.1975)]. Thus this issue was not properly preserved for appeal. Finally, the defendant himself could have subpoenaed Dr. Thompson without court permission. N.M.R.Crim.P. 48 [§ 41–23–48, N.M.S.A. 1953 (Supp.1975)]; N.M.R.Civ.P. 45(e) [§ 21–1–1(45)(e), N.M.S.A. 1953]; N.M.R.Evid. 706(d) [§ 20–4–706(d), N.M.S.A. 1953 (Supp.1975)]. Had the trial court refused to allow Dr. Thompson to testify during the presentation of his case, the defendant would in that case have to have made an offer of proof to preserve error.

■ Defendant argues that the trial court erred in refusing to give his requested instruction[1] on expert testimony, where such testimony was crucial to his defense, citing to *People v. Ruiz*, 11 Cal.App.3d 852, 90 Cal.Rptr. 110 (1970). The trial court gave N.M.U.J.I.Crim. 40.50 [2d Repl. Vol. 6, N.M.S.A. 1953 (Supp.1975), at 324], which is identical to the last paragraph of defendant's requested instruction. In addition, the trial court gave N.M.U.J.I.Crim. 40.20 [2d Repl. Vol. 6, N.M.S.A. 1953 (Supp.1975), at 320]:

> You alone are the judges of the credibility of the witnesses and the weight to be given to the testimony of each of them. In determining the credit to be given any witness, you should take into account his truthfulness or untruthfulness, his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have and the reasonableness of his testimony considered in the light of all the evidence in the case.

At trial defendant argued that his instruction was a correct statement of the law, that the N.M.U.J.I.Crim. were "about as clear as mud," and that they were not in effect then and thus not applicable to this case. We disagree. The New Mexico Uniform Jury Instructions intended to and did cover the very situation which occurred here. The use note to N.M.U.J.I.Crim. 40.-20 clearly states that the instruction may be given whenever an expert witness has testified or when a layman has been permitted to state an opinion. The trial court in its discretion could use or refuse to use it prior to the effective date of N.M.U.J.I.Crim. *State v. Valenzuela*, 90 N.M. 25, 559 P.2d 402 (1976).

■ Third, defendant argues that the aggravated sodomy and first-degree kidnapping charges should merge into the murder charge (of which he was found not guilty), and thus he requests a reversal of his sentence for aggravated sodomy and first-degree kidnapping and a remand for proper sentencing for sodomy and second-degree kidnapping. Defendant contends that the very circumstances for the conviction of *aggravated* sodomy and *first-degree* kidnapping were the circumstances leading to the death of the victim. The only evidence of great bodily harm, necessary for the highest degrees of sodomy and kidnapping, were the very injuries leading to the victim's death. When injury in fact causes

---

1. The rules of evidence ordinarily do not permit the opinion of a witness to be received as evidence. An exception to this rule exists in the case of expert witnesses. A person who, by education, study and experience has become an expert in any art, science or profession, and who is called as a witness, may give his opinion as to any such matter in which he is versed and which is material to the case. You should consider such expert opinion and should weigh the reasons, if any, given for it. You are not bound however, by such an opinion. Give it the weight to which you deem it entitled, whether that be great or slight, and you may reject it, if in your judgment the reasons given for it are unsound.

You should consider each opinion received in evidence in this case and give it such weight as you think it deserves. If you should conclude that the reasons given in support of an opinion are not sound or that for any other reason an opinion is not correct, you may disregard the opinion entirely.

This is N.M.U.J.I.Civ. 15.1.

---

death, rather than merely raising its probability, great bodily harm has not occurred but rather death has, thus the aggravated element of the crime should merge into the charge of murder. Defendant submits that he could therefore only be convicted of the lesser felonies of sodomy and second-degree kidnapping.

From this somewhat confusing argument, we glean two different arguments. First, defendant believes there was little or no evidence that the sodomy and kidnapping took place under aggravating circumstances, and that the great bodily harm leading to the victim's death occurred subsequent to the kidnapping and sodomy. Thus, appellant contends he should have only been charged with sodomy, second-degree kidnapping, and murder, and, because of the jury's decision, convicted of only the first and second charge. The events of that night were for the jury to determine, and they rejected appellant's interpretation of the probable events. There was evidence to substantiate the jury's interpretation: a significant amount of blood was found at Allsup's and some more at the trailer and at the residence at 2304 Axtell. In light of these facts, appellant's hypothesis would only hold up under improbable circumstances, which in any event the jury rejected. Second, appellant appears to be arguing that the great-bodily-harm element of aggravated sodomy and first-degree kidnapping merges into the murder charge, leaving only sodomy, second-degree kidnapping, and murder. Although a novel argument, he fails to cite any cases for support of this proposition. We reject it. We find that the homicide resulting from the great bodily harm was sufficient evidence for the jury to find aggravated sodomy and first-degree kidnapping, and we hold that there is no merger.

■ Fourth, defendant argues the imposition of the death penalty was unconstitutional. We agree. *State v. Rondeau,* 89 N.M. 408, 553 P.2d 688 (1976). The proper penalty to be imposed is life imprisonment.

■ Fifth, defendant argues that since the trial court failed to instruct the jury that it must find that the victim was not defendant's wife in the rape (§ 40A-9-2, N.M.S.A. 1953) conviction, it was a jurisdictional error (failure to instruct on an essential element of the crime)* which could be raised for the first time on appeal and which requires a new trial if the error occurred. *State v. Gunzelman,* 85 N.M. 295, 512 P.2d 55 (1973). This argument was rejected in *State v. Bell,* 90 N.M. 134, 560 P.2d 925 (1977). In that case, as well as in this case, there was no evidence whatsoever that the victim was the spouse of the defendant.

The remaining arguments raised by defendant are without merit.

The trial court is affirmed with direction to proceed in a manner not inconsistent herewith.

OMAN, C. J., and McMANUS, J., concur.