673 P.2d 1324

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**John SOUTHERLAND, a/k/a John
Sutherland, Defendant-Appellant.**

**No. 7016.**

Court of Appeals of New Mexico.

Nov. 3, 1983.

Certiorari Denied Dec. 22, 1983.

Paul G. Bardacke, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet Clow, Chief Public Defender, William P. Slattery, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

HENDLEY, Judge.

Convicted of attempted first degree murder contrary to NMSA 1978, § 30-28-1,

and NMSA 1978, § 30–2–1 (Cum.Supp. 1983), and armed robbery contrary to NMSA 1978, § 30–16–2, defendant appeals. The issues raised concern only the attempted murder conviction. Defendant claims 1) jurisdictional error in the instructions given on the crime of attempted second degree murder, and 2) error in the trial court's failure to give defendant's requested instruction on the lesser offense of aggravated battery. The armed robbery conviction is, therefore, affirmed. Issues raised in the docketing statement but not briefed are deemed abandoned.

The charges concern the robbery of a convenience store. The store clerk testified that he was sweeping outside the store when a car drove up. A young man got out of the car and walked into the store. The clerk followed the young man inside to help him. The clerk had locked the cash register while he was outside the building. When he went back inside, he walked behind the counter and put the key back in the register. The young man pulled out a revolver and pulled the trigger. The gun was twelve inches from the clerk's face. The bullet hit the clerk in the nose. As the clerk fell backward, he saw the young man reach into the cash register. Approximately $90.00 was taken. The clerk identified the defendant as the man who did this.

The defendant testified that he went to the convenience store to get some burritos. While the clerk was checking him out, a man came up behind defendant. This man reached a gun around defendant and shot the clerk point-blank in the face. Defendant, who had been in the penitentiary in February, 1980, just got "the hell out of there, man."

The clerk did not remember the burritos. Circumstantial evidence supports defendant's version that the clerk had gotten the burritos and rung them up on the register. Other circumstantial evidence indicates that it was defendant who fired the shot. When defendant was first approached by the police he denied any knowledge of the inci-

dent. Defendant's father owns a Taurus .38 Special. When the police seized the gun the next day, it smelled like it had been fired. The police also seized a live .38 caliber round and a spent .38 shell from defendant's room at his father's house. A firearms expert testified that the bullet removed from the store clerk and the shell from defendant's room were fired from defendant's father's gun.

*Second Degree Murder Instruction*

The trial court instructed the jury in accordance with NMSA 1978, UJI Crim. 28.10 (Repl.Pamp.1982), on attempt as it relates to first degree murder and second degree murder. Following these instructions, instructions were given on first degree murder and second degree murder. Although being convicted of attempted first degree murder, defendant claims jurisdictional error in the trial court's second degree murder instruction.

The difference between the trial court's instruction and a correct instruction is the same as that found in *State v. Jackson,* 99 N.M. 478, 660 P.2d 120 (Ct.App.1983). The court's instruction included as its second element the outdated language, "The defendant had an intent to kill or do great bodily harm to Russell Freed." *See* NMSA 1978, UJI Crim. 2.10 (Repl.Pamp.1982). The second element should have read, "The defendant knew that his acts created a strong probability of death or great bodily harm to Russell Freed." *See* NMSA 1978, UJI Crim. 2.11 (Repl.Pamp.1982). The majority in *Jackson* held that the outdated language rendered a tendered instruction sufficiently incorrect so that no error occurred in the failure to give it. *Jackson* also held that the language was not sufficiently incorrect as to amount to jurisdictional error when that language appeared in the court's instruction. Because *Jackson* is pending on certiorari, another reason why there is no jurisdictional error in this case will be given.

Defendant raises the issue of the error in the trial court's instruction as juris-

dictional error. *See* NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 308 (Repl.Pamp.1983). He raises it as jurisdictional error because he did not object to the incorrect instruction. Jurisdictional error may be raised for the first time on appeal. *State v. Gunzelman,* 85 N.M. 295, 512 P.2d 55 (1973).

■ The State argues that the evidence showed nothing other than attempted first degree murder and that, therefore, instructions on attempted second degree murder should not have even been given. We disagree. The cases relied upon by the State concern the sufficiency of evidence for a first degree murder conviction. Just because the evidence would support a first degree murder conviction does not mean that all lower degrees of murder are excluded. If there is evidence of a lesser degree, then defendant is entitled to an instruction on the lesser degree. In a case of deliberate murder, as opposed to other types of first degree murder, the evidence will always sustain a verdict of second degree murder because it is for the jury to determine the nature of defendant's intent (deliberate or plain) and the character of the slayer's malice (express or implied). *Compare Torres v. State,* 39 N.M. 191, 43 P.2d 929 (1935), with *State v. Reed,* 39 N.M. 44, 39 P.2d 1005, 102 A.L.R. 995 (1934). Thus, cases with evidence showing a deliberate intent to kill will always necessarily show "an intent to kill or do great bodily harm" or a "knowledge that one's acts create a strong probability of death or great bodily harm."

■ The answer to defendant's contention lies in an understanding of the concept of jurisdictional error set forth in *Gunzelman.* Although later cases phrase the rule in terms of correct elements instructions on "offense," the "crimes charged," or the "crimes submitted to the jury,"[1] a look at the genesis of the rule shows that it is only applicable to the crime upon which conviction was had. The rule concerning jurisdictional error in this situation appears to have had its genesis in *State v. Walsh,* 81 N.M. 65, 463 P.2d 41 (Ct.App.1969). *Walsh* referred to the "crime charged." However, the rationale behind *Walsh* was that a court would lack jurisdiction to adjudicate guilt and sentence a defendant when it does not " 'submit to the jury the essential ingredients of *the only offense on which the conviction could rest * * *.' "* (Our emphasis.) *Gunzelman, Foster,* and *Montoya* all had one offense charged and one offense submitted to the jury. Thus, a failure to instruct on an essential element of that offense would deprive the court of jurisdiction to proceed further in the case. In other words, a sentence is only imposed upon conviction of a crime. If the jury is not instructed on essential ingredients of the crime, then defendant has not been convicted of the crime.

■ Here, however, defendant's conviction was based on proper instructions for the offense on which the conviction could rest—attempted first degree murder. Unless the jurisdictional error rule is applied blindly, it is difficult to see how the court lacked authority to proceed by making a mistake in an instruction on an offense for which he was not convicted.

■ NMSA 1978, Crim.P.R. 41(a) (Repl. Pamp.1980), does not alter the above reasoning. Rule 41(a) imposes a mandatory duty to instruct on "all questions of law essential for a conviction of the crime or crimes submitted to the jury." The Committee commentary to Rule 41(a), and *State v. Bender,* 91 N.M. 670, 579 P.2d 796 (1978), indicate that the amended rule is simply a codification of prior case law. Amended Rule 41(a) is applicable to this case. *See Najar.* However, because the rule is simply

---

1. *State v. Gunzelman* (crime charged); *State v. Najar,* 94 N.M. 193, 608 P.2d 169 (Ct.App.1980) (crimes submitted to the jury); *State v. Foster,* 87 N.M. 155, 530 P.2d 949 (Ct.App.1974) (offense); *State v. Montoya,* 86 N.M. 155, 520 P.2d 1100 (Ct.App.1974) (crime).

a codification of prior law and because, under prior law, jurisdictional error was limited to the "only offense on which conviction could rest," a decision that jurisdictional error occurred in this case would be contrary to the decisional history concerning the court's mandatory duty to instruct. *Najar.*

Two additional considerations are addressed. First, the jurisdictional error rule in the past was applicable only to those situations where there was a complete failure to instruct on essential elements. *State v. Cardona,* 86 N.M. 373, 524 P.2d 989 (Ct. App.1974); *State v. Puga,* 85 N.M. 204, 510 P.2d 1075 (Ct.App.1973). Here, there was not a complete failure to instruct on the requisite intent for second degree murder. The court defined the intent as an "intent to kill or do great bodily harm" instead of a "knowledge that one's acts create a strong probability of death or great bodily harm." The old language is more favorable to defendant in that it is at once harder for the State to prove and more similar to the element of intent in first degree murder. Nonetheless, there are recent cases which apply the jurisdictional error rule to a failure to give correct uniform jury instructions on elements, even if the elements are covered by other instructions. *State v. Doe,* Ct.App. No. 5774 (Filed October 21, 1982); *State v. Otto,* 98 N.M. 734, 652 P.2d 756 (Ct.App.1982); *State v. Curlee,* 98 N.M. 576, 651 P.2d 111 (Ct.App.1982). Thus, the fact that we are here dealing with an erroneous instruction and not a complete failure to instruct is not, in itself, reason to affirm.

Second, there is a doctrine which holds that error in an instruction on a lesser offense is harmless and non-prejudicial where defendant is convicted of the greater offense. *State v. Hamilton,* 89 N.M. 746, 557 P.2d 1095 (1976); *State v. King,* 90 N.M. 377, 563 P.2d 1170 (Ct.App.1977); *State v. Scott,* 90 N.M. 256, 561 P.2d 1349 (Ct.App.1977). However, *State v. Reynolds,* 98 N.M. 527, 650 P.2d 811 (1982), expressly overruled *King* and *Scott* to the extent they

were inconsistent with *Reynolds. King* and *Scott* were based on *Hamilton.*

*Reynolds* is not applicable to this case for two reasons. First, *Reynolds* was concerned with a failure to instruct on voluntary manslaughter. The contention there was that the failure to so instruct was harmless because the jury found defendant guilty of first degree murder, thus not even reaching second degree murder, much less voluntary manslaughter. *Reynolds* was based on the rationale from *State v. Benavidez,* 94 N.M. 706, 616 P.2d 419 (1980), which held that where the jury was not even given the choice to find provocation, it begs the question to say that having found deliberate intent, provocation would not have been found. This rationale is not applicable. The jury here was given the choice, albeit on somewhat erroneous instructions, of finding attempted second degree murder.

Second, *Reynolds* involved a proper request for a voluntary manslaughter instruction. We read *Reynolds* to say that when there is a proper objection to instructions, it is no answer to say that the error is harmless based on how the jury is instructed to deliberate. However, when there is no proper objection, the *Hamilton-Scott-King* line of cases do preclude a finding of jurisdictional error.

In summary, there was error in the trial court's instruction on second degree murder. *Jackson.* Defendant having been convicted of attempted first degree murder, the court was not deprived of jurisdiction on account of the erroneous second degree murder instruction. *Najar; Urban; Walsh.* The combination of the jurisdictional error rule in these cases and the harmless error rule of *Hamilton, Scott,* and *King,* precludes consideration of defendant's issue. *Reynolds* only overruled *Hamilton, Scott,* and *King* to the extent the issue was raised in the trial court.

*Aggravated Battery Instruction*

Defendant tendered requested instructions on the lesser offense of aggravated

battery. Under the circumstances of this case, aggravated battery is a lesser included offense of the offense charged, attempted murder. *State v. DeMary,* 99 N.M. 177, 655 P.2d 1021 (1982). The State does not contend otherwise. The tender of correct instructions adequately preserved the issue. Crim.P.R. 41(d).

 Instructions on lesser included offenses should only be given when there is evidence that the lesser offense is the highest degree of the crime committed. *State v. Martinez,* 98 N.M. 27, 644 P.2d 541 (Ct. App.1982); *State v. Romero,* 94 N.M. 22, 606 P.2d 1116 (Ct.App.1980). The difference between the offenses upon which instruction was given and aggravated battery is in the intent element. First degree murder includes a deliberate intent to kill. Second degree murder includes either an intent to kill *or* do great bodily harm or a knowledge that one's acts create a strong probability of death *or* great bodily harm. Aggravated battery includes an intent to injure.

Thus, the issue is whether the evidence shows anything less than either an intent to kill or do great bodily harm, or knowledge that one's acts create a strong probability of death or great bodily harm. Because great bodily harm is less than killing, we only discuss great bodily harm. Further, because the instruction on second degree murder was not objected to, it became the law of the case. *State v. Martin,* 90 N.M. 524, 565 P.2d 1041 (Ct.App.1977).

Great bodily harm includes injury which creates a high probability of death. NMSA 1978, UJI Crim. 1.21 (Repl.Pamp. 1982). The question, therefore, is whether the evidence showed anything less than intent to inflict an injury which created a high probability of death. *See State v. Simonson,* 100 N.M. 297, 669 P.2d 1092 (1983). On the basis of the evidence presented, the answer is no. Defendant used a large caliber gun to shoot the store clerk point-blank in the face. The gun was twelve inches from the clerk's face and left powder burns. From defendant's perspective, it looked like the clerk's face was blown off. The doctor testified that the clerk was very fortunate to be alive and that in most instances the type of injury received would be fatal. It is only a matter of common sense that in most instances a person would not survive a shot in the face by a .38 caliber gun twelve inches away.

Affirmed.

IT IS SO ORDERED.

LOPEZ and DONNELLY, JJ., concur.