833 P.2d 1170

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Juan TREVINO, Defendant–Appellant.**

**No. 12375.**

Court of Appeals of New Mexico.

July 2, 1991.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BIVINS, Judge.

Defendant appeals his convictions on four counts of criminal sexual contact of a minor (criminal sexual contact), NMSA 1978, § 30–9–13 (Cum.Supp.1990), and two counts of contributing to the delinquency of a minor (contributing), NMSA 1978, § 30–6–3 (Repl.Pamp.1984). On appeal, defendant argues (1) insufficient evidence of use of authority under Section 30–9–13(A)(2)(a); (2) merger of the contributing counts and the criminal sexual contact counts; (3) error in the admission of evidence of other uncharged acts; (4) error in refusing his request to exclude a testifying police officer from the courtroom; (5) prosecutorial misconduct; (6) failure to give requested jury instructions; (7) violation of his right to counsel; and (8) unconstitutional denial of trial tapes on appeal. We address issues (1) and (2) thoroughly and the remaining issues summarily, indicating how we would rule on these issues but for the following question. Although not raised, we also discuss a question of possible fundamental error: whether the conviction of criminal sexual contact of a child under the age of 13 must be set aside and remanded for new trial in light of our supreme court's recent decision in *State v. Osborne,* 111 N.M. 654, 808 P.2d 624

(1991), which was decided after the parties filed their briefs. We believe this question involves a significant question of law under the constitution of the United States and also an issue of substantial public interest that should be determined by the supreme court. *See* NMSA 1978, § 34–5–14(C)(1) & (2) (Repl.Pamp.1990). We are concerned that *Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973) compels a decision by this court with which the supreme court ultimately might not agree. Additionally, as our discussion points out, resolution of a part of the issue may involve a choice between what appears to be conflicting decisions by the supreme court. Therefore, we certify the case to the New Mexico supreme court. We first discuss the factual background, then we discuss issues (1) and (2), followed by a summary discussion of issues (3) through (8). Finally, we address the issue we certify.

## FACTS

Defendant operated a go-cart track in Roswell, New Mexico. He employed J.C., age fourteen, and permitted J.J., age twelve, to "help out" at the track in exchange for free rides. J.C.'s principal duties included operation of the ticket booth, while J.J. usually retrieved used go-carts. According to testimony at trial, defendant fondled the genitals of both boys on several occasions during their tenure at the track. Defendant was thereafter charged and convicted of one count of criminal sexual contact of J.J., three counts of criminal sexual contact of J.C., and two counts of contributing.

## DISCUSSION

### I. Use of Authority

■ Defendant challenges the sufficiency of the evidence with respect to the requirement in Section 30–9–13(A)(2)(a) that he used his position of authority to coerce one of the boys, J.C., to submit to criminal sexual contact. Section 30–9–13 states, in relevant part:

A. Criminal sexual contact of a minor in the third degree consists of all criminal sexual contact of a minor perpetrated:

\* \* \* \* \* \*

(2) on a child thirteen to eighteen years of age when:

\* \* \* \* \* \*

(a) the perpetrator is in a position of authority over the child and uses this authority to coerce the child to submit[.] *Cf.* § 30–9–13(B) (fourth degree felony where use of authority not charged). Here, there is no dispute that defendant's status as employer placed him in a position of authority. *See* NMSA 1978, § 30–9–10(D) (Repl.Pamp.1984). Rather, we are asked to review the evidence to determine whether defendant *used* his position as employer in a manner contemplated by Section 30–9–13(A)(2)(a).

■ On appeal, we view the evidence in the light most favorable to the jury verdict, resolving all conflicts and indulging all reasonable inferences in support thereof. *See State v. Brown*, 100 N.M. 726, 676 P.2d 253 (1984). Use of a position of authority to coerce sexual contact may be proven inferentially. *See State v. Gillette*, 102 N.M. 695, 699 P.2d 626 (Ct.App.1985). In *State v. Corbin*, 111 N.M. 707, 809 P.2d 57 (Ct. App.1991), we recently addressed the issue of what constitutes "use of authority" in an employer/employee context. We stated that an authority figure uses his position to coerce a child where the child's submission is the result of undue influence or external forces. *Id.* Significantly, we held that sufficient evidence exists where a defendant's position of authority plays at least a partial role in the coercion. *Id.* In other words, the state does not have to prove that the coercion was exclusively the result of a defendant's exercise of authority over the child.

Here, there were several facts from which we believe the jury could infer coercion resulting from the employment relationship. First, the sexual contact took place on a job site owned by defendant, who had sole supervisory control not only over the premises but also over the victim. Second, and somewhat related to the first fact, defendant assigned J.C. to a small ticket booth where all of the incidents of sexual contact took place. That booth could only hold two or three people and it had a single entrance opposite the ticket window. J.C. testified that on the first incident, defendant came up behind him and began to fondle him sexually as he tended the booth. This continued on several separate occasions. J.C. did not tell others of the incident because he was scared and "didn't know how to handle it then." J.C. testified that on the final incident, defendant came up behind him, pulled both of their pants down, and apparently attempted anal penetration. J.C. then called his mother and tearfully told her what had happened while she drove him home. In light of defendant's ability to place J.C. in a confined, private workstation and J.C.'s testimony that he was scared, we believe the jury could infer that defendant used his position of authority to coerce J.C. to submit to the sexual contact. *See State v. Corbin; State v. Gillette.*

■ Defendant would have us disregard the realities of the situation by adopting a requirement that the state must prove employment coercion by direct evidence such as a direct threat of loss of a job if the victim did not submit, promise of a raise in exchange for sexual contact, or similar inducements related to the employment. We reject such a stringent requirement. It overlooks the nature of a minor. Common sense and experience teaches us that children generally yield to the wishes of adults. This is particularly true where an adult, such as an employer, has supervisory control. This is not to say that the position of employer in and of itself necessarily establishes the use of that position as coercion; however, where there exists sufficient connection between the employment and the sexual contact, as in the case before us, we hold that the jury can appropriately infer that the employer used coercion, as was done here.

## II. Merger

■ Defendant makes two arguments under this point. First, he contends that because criminal sexual contact with a minor cannot be committed without also contributing to the delinquency of the minor, the latter must merge with the former.

Second, defendant claims that the district court erred in enhancing both contributing convictions under the mandatory habitual statute because contributing is subsumed within the criminal sexual contact convictions. Because we reject defendant's merger argument and hold that the two offenses do not merge, it follows that the district court could enhance the contributing convictions.

The United States Supreme Court, in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) said: "[t]he Double Jeopardy Clause embodies three protections: 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" *Id.* at 516, 110 S.Ct. at 2090, 109 L.Ed.2d at 561 (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted)); *see also State v. Ellenberger*, 96 N.M. 287, 629 P.2d 1216 (1981). We are concerned here with the third protection.

The critical question for us to determine is whether the legislature intended to authorize multiple punishments for the same offense. *State v. Tsethlikai*, 109 N.M. 371, 785 P.2d 282 (Ct.App.1989); *State v. Edwards*, 102 N.M. 413, 696 P.2d 1006 (Ct. App.1984).

In recognizing contributing to the delinquency of a minor as a crime separate and distinct from any underlying violation of the law, the New Mexico Supreme Court in *State v. Cuevas*, 94 N.M. 792, 617 P.2d 1307 (1980), said that to hold otherwise would mean repealing the contributing statute. Further, we have no difficulty in discerning separate purposes for punishing the crimes of contributing and criminal sexual contact.

The courts have long recognized the legislative intent in enacting the contributing statute was to extend the broadest possible protection to children, recognizing that they may be led astray in innumerable ways. *State v. Pitts*, 103 N.M. 778, 780, 714 P.2d 582, 584 (1986). In contrast, recognizing the crime of criminal sexual contact protects the bodily integrity and personal safety of an individual. *State v. Williams*, 105 N.M. 214, 217, 730 P.2d 1196, 1199 (Ct.App.1986).

Almost sixty years ago the United States Supreme Court announced the test for answering the question as to whether the legislature intended multiple punishments for the same offense. In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Court said:

Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* at 304, 52 S.Ct. at 182 (citation omitted). The test has been most recently reaffirmed and applied by the Supreme Court in *Grady v. Corbin*. As *Grady* points out, "The *Blockburger* test is simply a 'rule of statutory construction,' a guide to determining whether the legislature intended multiple punishments." *Id.* at 517, 110 S.Ct. at 2091, 109 L.Ed.2d at 561–62 (quoting *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983)).

Applying the *Blockburger* test, we must conclude that, although both the crimes of criminal sexual contact and contributing were violated by the unlawful and intentional touching of the minor's genitals, two offenses were committed. In *Blockburger*, a sale of one package of illicit drugs violated two separate sections of the statute, in which one section prohibited the sale of the drug except in or from the original stamped package. The other section prohibited the sale of the drug not in pursuance of a written order from the purchaser. In that case, there was only one sale.

To be sure, proof of the unlawful and intentional touching of the minor's intimate parts constituted the act which would tend to cause or encourage the delinquency of the minor; however, contributing to the

delinquency of a minor requires proof of that additional element of "tends to cause or encourage," which is not required under criminal sexual contact. The jury instructions included the element that the touching of each minor's intimate parts "caused or encouraged [the minor] to conduct himself in a manner injurious to the morals of [the minor]." Defendant does not challenge the sufficiency of the evidence establishing that additional element.

In *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), concerning the question of cumulative punishment, the Court treated *Blockburger* as only a method for ascertaining legislative intent when nothing more concrete was available. It was said that "the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed." *Id.* at 344, 101 S.Ct. at 1145; *see also* 2 W. La-Fave & J. Israel, *Criminal Procedure* § 17.4(b) at 388–89 (1984). In the case before us, while we conclude that legislative intent is clear from the different purposes of the two crimes, application of the *Blockburger* test also leads to that conclusion.

We believe the analysis applied and the result reached comports with the New Mexico supreme court's decision in *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991) which considered whether separate consecutive sentences for incest and criminal sexual penetration violate the double jeopardy prohibition against multiple punishments. The court held it did not. Applying the same rationale, we hold there was no double jeopardy violation.

■ We are concerned, however, that the present uniform jury instruction, *see* SCRA 1986, 14–601, permits the jury to find that defendant was guilty of contributing to the delinquency of a minor if defendant conducted himself "in a manner injurious to [the child's] (morals) (health) [or] (welfare)." This alternative, which is based on a decision of the court of appeals, *see State v. Leyba*, 80 N.M. 190, 453 P.2d 211 (Ct.App.1969), may not clearly tell the jury that it must determine that the defendant's acts must have tended to or encouraged the child to conduct himself in a manner injurious to his morals, health or welfare. *Id.* As a result, the jury may equate the offense of contributing and the offense of criminal sexual contact. Under these circumstances, the test outlined in *Swafford* may not provide adequate protection against double punishment. We think the uniform jury instruction with respect to contributing should be revisited in connection with the *Swafford* holding.

### III. Additional Issues Answered Summarily

■ Defendant raises six additional issues, which we dispose of summarily. First, defendant contends that it was reversible error to admit J.J.'s testimony concerning a separate incident of alleged criminal sexual contact of a minor. With respect to sex crimes, we have long recognized an exception to the general prohibition against using evidence of collateral crimes to prove the specific crime charged; evidence of similar sex offenses committed by a defendant with a prosecuting witness is admissible as corroborating evidence. *State v. Mankiller*, 104 N.M. 461, 722 P.2d 1183 (Ct.App.1986); *State v. Minns*, 80 N.M. 269, 454 P.2d 355 (Ct.App.1969). We decline defendant's invitation to revisit *Mankiller* and *Minns*.

■ Second, defendant argues that the trial judge erred in denying his request to exclude a testifying police officer from the courtroom pursuant to SCRA 1986, 11–615. Trial courts have broad discretion under Rule 11–615. *See State ex rel. State Highway Dep't v. First Nat'l Bank*, 91 N.M. 240, 572 P.2d 1248 (1977). The purpose of the rule is to prevent witnesses from tailoring their testimony to that of another witness and to allow inconsistencies in the testimony to be exposed. *State v. Simon-*

*son,* 100 N.M. 297, 669 P.2d 1092 (1983); *see also State v. Reynolds,* 111 N.M. 263, 804 P.2d 1082 (Ct.App.1990). Here, the officer was ordered not to talk to other witnesses. Moreover, he testified regarding a very narrow issue, chain of custody. We therefore hold that the trial judge properly exercised his discretion to allow the officer to remain in the courtroom throughout the trial. *See State v. Chavez,* 100 N.M. 730, 676 P.2d 257 (Ct.App.1983).

▆▆▆▆ Third, defendant contends that prosecutorial misconduct requires reversal. During closing argument, the prosecutor said, "He [J.J.] was working where no twelve-year-old boy should be working." Defense counsel requested and received an instruction to the jury that child labor was not an issue in the case. Defendant did not ask for a mistrial. Defendant may not complain on appeal when the specific relief requested was granted. *State v. Peterson,* 103 N.M. 638, 642, 711 P.2d 915, 919 (Ct. App.1985), *cert. denied,* 475 U.S. 1052, 106 S.Ct. 1279, 89 L.Ed.2d 586 (1986).

▆▆▆▆ Fourth, defendant argues that jury instructions on battery should have been given on the theory that the jury could have found that the victims' sexual areas were not touched. A trial court should not give an instruction on a lesser offense unless there was evidence that the lesser offense was the highest degree of the crime committed. *See State v. Martinez,* 98 N.M. 27, 644 P.2d 541 (Ct.App. 1982). Here, the only evidence presented was that defendant touched areas prohibited under the criminal sexual contact statute. Since there was no evidence that tended to show that battery was the highest offense committed, the trial court properly refused defendant's request.

▆▆▆▆ Fifth, defendant asserts that his right to counsel was violated by the police when they videotaped calls he made while in jail. Defendant provides no evidence that the persons called from jail took any other action in the conversation other than to listen. Since the telephone call

recipients did not actively engage defendant in a manner likely to elicit incriminating statements, defendant's sixth amendment rights to counsel were not violated. *See State v. Aragon,* 109 N.M. 632, 788 P.2d 932 (Ct.App.1990). As observed in Annotation, *Admissibility, in Criminal Prosecution, of Evidence Obtained by Electronic Surveillance of Prisoner,* 57 A.L.R.3d 172 (1974), the courts have generally upheld the admissibility of evidence marshalled by means of prison surveillance. Inmates of a jail or prison have a limited expectation of privacy. *See State v. Ferguson,* 106 N.M. 357, 743 P.2d 113 (1987). Moreover, defendant has raised no issue concerning the applicability of NMSA 1978, Section 30–12–8 (Repl.Pamp.1984) in the instant case.

Finally, defendant argues that he was unconstitutionally denied access to the trial tapes for preparation of his case on appeal. As defendant concedes, this issue is moot because appellate counsel received the tapes when this case was assigned to the general calendar.

## IV. Fundamental Error

▆▆▆ While this case was pending the supreme court decided *Osborne,* which also involved criminal sexual contact of a minor. The court held in that case that "unlawfulness" was an essential element of the offense and failure to instruct the jury on that element constitutes fundamental error. The court indicated, however, that instructions which describe the impermissible nature of the act adequately differentiate lawful from unlawful conduct and, therefore, satisfy the element of unlawfulness.

As noted at the outset, defendant was convicted on four counts of criminal sexual contact of a minor. The instructions for counts 2, 4 and 5 each contain a description of the wrongful manner adequate to satisfy the element of "unlawfulness." Each of those instructions required the state to prove, beyond a reasonable doubt, that "de-

fendant was a person who by reason of his relationship to [the victim] was able to exercise undue influence over [the victim] and used his authority to coerce him to submit to sexual contact." Under *Osborne*, therefore, these instructions were adequate, and the criminal sexual contact convictions of J.C. should be affirmed.

The instruction for count 1, like the instruction in *Osborne*, tracked SCRA 1986, 14–925. It charged the jury:

> For you to find the defendant guilty of criminal sexual contact of a child under the age of 13 as charged in Count 1, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant touched or applied force to the penis of J.J.;
>
> 2. J.J. was 12 years of age or younger;
>
> 3. This happened in New Mexico on or about the 28th day of June, 1989.

Thus, this case squarely presents the same issue raised in *Osborne:* absent the essential element of "unlawfulness" as required in Section 30–9–13, did fundamental error occur so as to require us to set aside the conviction on count 1 and remand for a new trial on that count? We are not certain.

In *Osborne*, the defendant did not recall ever touching the minor's buttocks, but rather, contended that if he did, it would not have been in an inappropriate manner or with an inappropriate intent. In the case before us, defendant did not put at issue the manner of touching. His defense was primarily that the touching never occurred. However, if *Osborne* is intended to require inclusion of the element of unlawfulness even when the manner of touching is not at issue and, as here, the state proves beyond a reasonable doubt it was unlawful, then reversal and remand for a new trial is mandated. Supporting that view is the supreme court's rejection of the state's argument in *Osborne* that the use of the term "unlawfully" in the definition of criminal sexual contact of a minor mere-

ly establishes an exception or defense to the offense. In doing so, the court looked to the language of the statute itself and concluded the statute required unlawfulness as an element. If this view prevails, defendant's conviction on count 1 should be reversed.

We cannot overlook, however, the fact that *Osborne* did not involve a case, such as before us, where the state proves unlawfulness and defendant does not put that element at issue. Further, we are concerned with prior supreme court precedents that could be viewed as holding contrary to *Osborne* but which were not expressly overruled by that case.

As examples of the latter, we have cases such as *State v. Melton*, 90 N.M. 188, 561 P.2d 461 (1977), which hold failure to instruct the jury it must find the victim was not defendant's wife in order to convict for rape does not constitute jurisdictional error where there was no evidence whatsoever that victim was the spouse of the defendant. *See State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977) (same); *Kendall v. State*, 90 N.M. 191, 561 P.2d 464 (1977) (same). Other courts have reached the same result. *See, e.g., United States v. McCaskill*, 676 F.2d 995 (4th Cir.1982) (failure to instruct that government must prove knowledge by aider and abettor that actual perpetrators were armed not reversible error where no question defendant had requisite knowledge and, in any event, absent proper and timely objection there was no manifest injustice constituting plain error); *United States v. Hensel*, 711 F.2d 1000 (11th Cir. 1983) (failure to charge jury on element of crime, nexus between vessel injured and commerce, held not plain error, where element not in dispute, proof of element met, and no other prejudice shown). *Cf. United States v. Brooksby*, 668 F.2d 1102 (9th Cir.1982) (reversible error not to instruct on element of "willfully" when "willfulness" was only element of offense defendant challenged).

Similarly, the supreme court's decision in *Osborne*, holding that unlawfulness is an

element of criminal sexual contact, is analogous to its decision in *Reese v. State*, 106 N.M. 498, 745 P.2d 1146 (1987), holding that knowledge that the victim is a peace officer constitutes an element of peace officer assault and battery. In *State v. Hilliard*, 107 N.M. 506, 760 P.2d 799 (Ct.App. 1988), we held that, if the facts of a particular case do not raise a factual issue as to an element not in a uniform jury instruction, there is no jurisdictional error for failure to instruct on that element. Although we called knowledge a defense in *Hilliard*, the supreme court repeatedly said it was an element in *Reese*.

Further, the supreme court's careful avoidance of reliance on a theory of "jurisdictional" error in *Osborne* suggests that the approach to take in cases like this is to inquire whether fundamental error occurred. As Justice Montgomery, the author of *Osborne*, noted in *Sundance Mechanical & Utility Corp. v. Atlas*, 109 N.M. 683, 789 P.2d 1250 (1990), "jurisdictional" has two meanings: the first indicates the trial proceedings are void and the second simply indicates error that may be raised for the first time on appeal. To complicate matters, in criminal cases to which the writ of habeas corpus was applicable, the term "jurisdiction" was expanded to include any problems in the proceedings that would warrant habeas relief. *McClesky v. Zant*, —— U.S. ——, 111 S.Ct. 1454, 1461–62, 113 L.Ed.2d 517 (1991). Although this fiction of jurisdiction was discarded by the Supreme Court in 1942, *id.*, our New Mexico cases continued to follow the Supreme Court's concept of jurisdiction after that Court discarded it. *See Orosco v. Cox*, 75 N.M. 431, 405 P.2d 668 (1965) (relying on *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), a pre–1942 case); *State v. Foster*, 87 N.M. 155, 530 P.2d 949 (Ct.App.1974) (relying on *Orosco*'s concept of jurisdiction in a non-habeas case).

The history of the concept of jurisdictional error in jury instructions was explained in *State v. Southerland*, 100 N.M. 591, 673 P.2d 1324 (Ct.App.1983). Although we there said a court would lack jurisdiction to sentence someone who had not been convicted based on jury instructions including all elements of the crime, we acknowledged that *State v. Walsh*, 81 N.M. 65, 463 P.2d 41 (Ct.App.1969), was the originator of the concept of jurisdictional error in jury instructions. *Walsh*, in turn, relied on *Screws v. United States*, 325 U.S. 91, 107, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945), containing language about "error * * * so fundamental." Perhaps the phrase jurisdictional error can be limited and thus distinguished from the phrase fundamental error.

■■■ We are supported in this, not only by *Osborne*, but also by recent changes in the wording of SCRA 1986, 12–216. After 1986, that rule separated jurisdictional questions from questions involving general public interest, fundamental error, and fundamental rights. As to the former, the rule requiring preservation of error does not apply at all, indicating that the court must reach questions alleging lack of jurisdiction. As to the latter, the matter is in the appellate court's discretion, indicating that issues of fundamental error do not go to the jurisdiction of the court to act. Thus, we believe the term 'jurisdictional error' should be confined to instances in which the court where the error occurred was not competent to act and that it is inappropriate to equate jurisdictional error with all instances in which error may be raised for the first time on appeal.

Addressing the issue as possible fundamental error, the type of fundamental error at issue is the same as in *State v. DeSantos*, 89 N.M. 458, 553 P.2d 1265 (1976), and *State v. Buhr*, 82 N.M. 371, 482 P.2d 74 (Ct.App.1971). In both those cases, the problems with the instructions were such that the verdict of guilty was rendered virtually meaningless. To a like effect in *Osborne*, the verdict was meaningless because the instructions would have allowed a conviction for an act defendant admitted committing, touching the child on

the buttocks while he was hugging her, when such an act without more is not criminal. In *Osborne*, the supreme court concluded, "The instructions failed to require the jury to resolve the issue, *raised in the evidence at trial*, of whether defendant's touching was done innocently as a mere affectionate pat or rub of M.C.'s bottom, or whether it was done in a sexual or other improper manner." 111 N.M. at 663, 808 P.2d at 633 (emphasis added).

Thus, the inquiry in *Osborne* was similar to the inquiry in *Hilliard:* did the evidence in the case raise an issue concerning the "element" which the uniform jury instructions failed to cover? If so, the verdict would be meaningless, and fundamental error would be present. If not, reversible error would not be present. If we were to apply these standards to this case, we would be confident no fundamental error occurred. The criminal sexual contact, if it took place in this case, was unquestionably sexual in nature. There was never any contention that the touching was lawful. The jury's verdict resolved the basic issue in the case, the question of whether the touching occurred. Under these circumstances, only the broader view of the doctrine of jurisdictional error would call for a reversal. Accordingly, we would not exercise our discretion, *see* Rule 12–216, to find fundamental error here. For these reasons, we also believe that the doctrine of jurisdictional error as explained in *Southerland* should not be followed, at least regarding crimes covered by uniform jury instructions.

If the broader view prevails, that is, reversal is required regardless of whether the manner of touching is put at issue, it will have far-reaching effects on every criminal sexual contact of a minor conviction obtained since adoption of chapter 9 of the Uniform Jury Instructions in 1977. For this reason and because of the uncertainty that exists, we certify the question.

IV.   Conclusion

For the reasons stated, we would affirm defendant's convictions of criminal sexual contact by a person in position of authority and contributing to the delinquency of a minor, including the accompanying habitual offender enhancement. However, because of our uncertainty as to the proper resolution of the conviction for criminal sexual contact of a child under 13, we certify this case for resolution.

IT IS SO ORDERED.

MINZNER, J., concurs.

DONNELLY, J., specially concurs.

DONNELLY, Judge (Specially Concurring).

I join in certification of this case and in the discussion as to the sufficiency of the evidence, merger, and each of the issues discussed summarily. I agree also, as stated in *State v. Osborne*, 111 N.M. 654, 808 P.2d 624 (1991), and as applicable to the instant case, that where the jury instructions, taken as a whole, otherwise sufficiently specify the nature of the criminal conduct so as to indicate its unlawful nature, the instructions properly supply the element of "unlawfulness" required in *Osborne*. Although I concur in certification of this cause, I disagree with the rationale relied upon as the basis for certification.

The majority indicates that in interpreting *Osborne*, a question exists as to whether "inclusion of the element of unlawfulness [is required in instructing as to the crime of criminal sexual contact of a minor (CSCM)] even when the manner of touching is not at issue and * * * the state proves beyond a reasonable doubt it was unlawful * * *." *Osborne* discussed the issue of whether "unlawfulness" was an essential element of the charge of CSCM as defined in NMSA 1978, Section 30–9–13 (Cum.Supp.1990), and held: "[U]nlawfulness is an essential element of the offense of CSCM ... [and] the failure to instruct the jury on the essential elements of an offense constitutes fundamental error." *Id.* at 662, 808 P.2d at 632. Thus, *Osborne* addresses the basic question of whether

SCRA 1986, 14–925 has been effectively modified so as to require inclusion of an additional essential element. Additionally, SCRA 1986, 5–608(A) provides that "[t]he court must instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury." *See also State v. Bender*, 91 N.M. 670, 579 P.2d 796 (1978) (failure to instruct on all of the essential elements of the crime charged is jurisdictional); *State v. Cole*, 153 Ariz. 86, 734 P.2d 1042 (App.Ct.1987) (fundamental error involving a jury instruction is one that goes to the foundation of the case or takes from defendant a right essential to his defense).

In view of the holding in *Osborne* that "unlawfulness" is an essential element of the offense of CSCM, it seems clear that it is not incumbent on an individual charged with CSCM to put at issue the manner of the alleged touching where he has entered a plea of not guilty to such charge. *See* SCRA 1986, 14–102; *see also State v. Chouinard*, 96 N.M. 658, 634 P.2d 680 (1981) (burden of proof rests on state to prove each element of the charged offense beyond a reasonable doubt), *cert. denied*, 456 U.S. 930, 102 S.Ct. 1980, 72 L.Ed.2d 447 (1982).

I join in certification of this case, however, on a different ground: whether, in light of the fact that the trial court herein instructed the jury as to the offense of CSCM using UJI Crim. 14–925 as approved by the supreme court, the decision in *Osborne* should be given prospective effect or retroactive effect.

The trial court in the present case was under a duty to give uniform criminal jury instruction 14–925, in the form prescribed at the time of trial. *State v. Isiah*, 109 N.M. 21, 781 P.2d 293 (1989). The trial court followed this requirement. Since the decision in *Osborne* determined that an additional element should be included in the jury instruction setting out the elements of

CSCM and this decision was handed down after the trial in the instant case, a substantial question of law now exists as to whether the result in *Osborne* should be applied retroactively or only prospectively. In *Huffman v. State*, 775 S.W.2d 653 (Tex. Ct.App.1989), the court addressed an issue involving whether a decision declaring an instruction unconstitutional should be applied retroactively. The court held that the decision would not be given retroactive application to a case tried before the issuance of the decision. The *Huffman* court observed, "retroactive application of a judicial decision is not mandated by either the United States or Texas Constitutions. *See e.g. Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) (exclusionary rule); *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (limiting retroactivity of *Escobedo* and *Miranda* rights); *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (limiting the *Katz* doctrine to prospective application)." 775 S.W.2d at 663.

If the decision in *Osborne* was intended to have retroactive application, does the ruling have retroactive application to cases, including the case at bar, which were pending on direct review at the time of the decision in *Osborne? See Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Huffman v. State; see also James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).