2003-NMCA-142

82 P.3d 46

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Hector VILLA III, Defendant–Appellant.**

**No. 23,229.**

Court of Appeals of New Mexico.

Oct. 10, 2003.

Certiorari Granted, No. 28,352,
Dec. 2, 2003.

Patricia A. Madrid, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, NM, for Appellee.

John D. Cline, Zachary A. Ives, Freedman, Boyd, Daniels, Hollander, Goldberg & Cline, P.A., Albuquerque, NM, for Appellant.

Patricia A. Madrid, Attorney General, Tannis L. Fox, Special Assistant Attorney General, Santa Fe, NM, for Amicus Curiae N.M. Environment Department.

## OPINION

PICKARD, Judge.

{1} Defendant appeals his convictions for violations of the Water Quality Act (WQA) for discharging in violation of a permit and for causing or allowing another to violate a permit. In this opinion we address whether, in the absence of proof that the permit was in effect at the time of the violations, attempt to commit the violations is a lesser included offense, and whether this Court can remand for sentencing on the lesser included offense. We hold that attempt to commit a violation of the WQA is a lesser included offense in this instance, and we remand to the trial court for adjudication of guilt on attempt and resentencing. We next address whether portions of the WQA are unconstitutionally vague and hold that they are not under the particular facts of this case. We also address whether the trial court erred in refusing Defendant's tendered jury instructions and whether the trial court erred in admitting certain documentary evidence. We hold that the trial court did not err in refusing the tendered jury instructions and that any error in admitting the documentary evidence was harmless. We reverse Defendant's convictions and remand to the trial court for resentencing and affirm the trial court in all other respects.

## FACTS

{2} Defendant was convicted by jury verdict of eight counts of violating NMSA 1978, § 74–6–10.2(A) and (B) (1993) of the WQA. Defendant was employed by Valley By–Products (VBP), a Texas rendering plant, to provide environmental expertise and consulting. VBP regularly discharged waste on a site in southern New Mexico (the Medina site) pursuant to a discharge permit (DP–854) issued in 1992. Pursuant to the WQA and Water Quality Control Commission regulations, DP–854 was to be in effect for five years and was due to expire on October 13, 1997. The actual holder of DP–854 was Henry Medina (Mr. Medina), who originally owned the land and maintained the discharge site. DP–854 was amended in 1995 to include larger quantities of discharge and to include other substances. The letter sent by the New Mexico Environment Department (NMED) approving the 1995 modification mistakenly stated that DP–854 would expire on October 16, 2000. In April 1998 NMED sent Mr. Medina two letters. The first notified him that he was not in compliance with DP–854 and listed the areas of noncompliance. The second letter, sent several days later, informed Mr. Medina of the mistake in calculating the expiration date, informed him that the correct

expiration date was November 1997, and notified him that the permit had already expired. In the same letter, NMED informed Mr. Medina that he could apply to renew the permit.

{3} Defendant was indicted for 52 violations of the WQA and was convicted of eight counts of knowingly causing or allowing another to discharge sludge from VBP in violation of DP–854 and for causing or allowing another to violate DP–854 in the failure to conduct monitoring, testing, sampling, and record keeping as required by DP–854. Defendant appeals his convictions, arguing (1) that the trial court erred in denying his motion for directed verdict because the State failed to prove an essential element of the crime, (2) that Section 74–6–10.2(B) is impermissibly vague, (3) that the trial court erred in refusing to instruct the jury on the limitations in the WQA as they pertain to DP–854, and (4) that the trial court erred in admitting certain evidence. We address each argument in order.

## DENIAL OF DIRECTED VERDICT

{4} Defendant argues that DP–854 had expired and was not in effect during the relevant period. He argues that because all of the counts had, as a predicate, the existence of DP–854, the district court erred in denying his motion for a directed verdict. But for the existence of the permit, Defendant does not contend that any other element of the offenses of which he was convicted was not adequately proved.

{5} We review the trial court's denial of a directed verdict to determine whether substantial evidence supports the charge. *State v. Dominguez,* 115 N.M. 445, 455, 853 P.2d 147, 157 (Ct.App.1993). The trial court denied Defendant's motion for directed verdict because it made the legal determination that the question of DP–854's validity was a question of fact for the jury to decide. We review the trial court's interpretation and application of the law de novo. *State v. Roman,* 1998–NMCA–132, ¶ 8, 125 N.M. 688, 964 P.2d 852.

### Validity of Permit

{6} Defendant was convicted of counts two through six, all of which state, in part:

"[D]efendant did, in Dona Ana County, New Mexico knowingly discharge, cause or allow another to discharge an unpermitted water contaminant onto the disposal site southwest of Las Cruces, operated by Henry Medina *under NMED Discharge Plan # 854* contrary to Section 74–6–10.2(A)(1)." (Emphasis added.) These violations were alleged to have occurred in August 1998. Counts fifteen through seventeen, for which Defendant was also convicted, all state in part: "[D]efendant did, in Dona Ana County, New Mexico knowingly fail to monitor, sample or report, or knowingly caused or allowed another to fail to monitor, sample or report *as required by permit, NMED Discharge Plan # 854,* issued pursuant to a state law or regulation, contrary to Section 74–6–10.2(A)(4)." (Emphasis added.) These violations were alleged to have occurred in February 1999, August 1999, and February 2000. Though Section 74–6–10.2(A)(1) differentiates between discharging without a permit if a permit is required and discharging in violation of any condition of a permit, Defendant was charged, in all counts of which he stands convicted, with violating a permit. Similarly, the jury instructions for counts two through six include as an element of the crime that Defendant "discharge[d] a water contaminant in violation of any condition of a permit[.]" The jury instructions for counts fifteen through seventeen include as elements of the crime that Defendant "knowingly failed to monitor, sample, or report, or knowingly caused or allowed another to fail to monitor, sample, or report as required by a permit[.]"

{7} There was evidence introduced at trial concerning the validity of DP–854. The letter from NMED approving DP–854 was issued on November 13, 1992, and stated that the approval would expire on "October [sic] 13, 1997." The 1995 modification approval letter mistakenly stated that DP–854's approval would expire on October 16, 2000. However, in a letter to Mr. Medina dated April 20, 1998, NMED admitted its inadvertent mistake in earlier stating the 2000 expiration date and informed Mr. Medina that the permit had, in fact, expired on November 13, 1997. Two NMED officials testified that

it had been the consistent position of NMED that DP–854 had expired in 1997.

{8} Though there may have been confusion as to the proper expiration date of the permit due to NMED's 1995 modification letter, there is no provision in the statute or the agency regulations indicating that a modification in a discharge permit extends the actual expiration date beyond five years. NMSA 1978, § 74–6–5(H) (1999) states, "Permits shall be issued for fixed terms not to exceed five years[.]" The only exception, which may extend a new permit by two more years if initial discharging is delayed, does not apply in this case. *See id.* The applicable agency regulation states that "[t]he secretary shall not approve a proposed discharge plan, modification, or renewal for … a period longer than five years[.]" 20.6.2.3109(H)(4) NMAC. The only exception in the regulation is for the ·same two-year extension for new discharges, which does not apply in this case. *See id.* During oral argument amicus NMED confirmed that permit modification never extends a permit term.

{9} The State concedes that DP–854 had "technically" expired, but urges us to consider DP–854 as a de facto permit because NMED implicitly instituted a grace period. The State argues that all of the parties considered that DP–854 was an active permit and acted accordingly. The State also points out that NMED took no administrative action on the permit to contravene the continued efficacy of the permit during the time of the alleged offenses.

{10} Due process requires that the State must prove every element of an offense beyond a reasonable doubt. *State v. Brown,* 1996–NMSC–073, ¶ 31, 122 N.M. 724, 931 P.2d 69. We can determine no legal basis for holding that DP–854 was a valid permit at the time Defendant committed the acts for which he was convicted. Defendant, the State, and NMED all now agree that DP–854 expired on November 13, 1997, as a matter of law. Since Defendant was charged with violating a permit, and the jury was charged to consider violation of a permit as an element of the offenses, Defendant's convictions for violating the permit cannot stand. Consequently, we hold that, under the limited circumstances of this case in which the permit was technically not in effect, there was insufficient evidence to support the charges. We must therefore reverse Defendant's convictions. We reiterate that, in all other respects, apart from the existence of a permit, there was sufficient evidence of each and every element of the crimes on which the jury convicted, and Defendant does not contend otherwise.

## Attempt is Lesser Included Offense

{11} The State argues that if this Court reverses Defendant's convictions, we should remand this matter to the trial court for resentencing on the offenses of attempt to commit the violations of the statute. Defendant argues that the elements of attempt to commit the violations of the statute are different from the elements considered by the jury at trial. Defendant argues that, because the jury was not instructed on attempt as a lesser included offense, remand for resentencing would violate his rights to due process and to a trial by jury.

{12} We first determine that the facts of this case are analogous to cases involving factual impossibilities, in which a defendant may be charged with and convicted of attempt to commit the underlying crime. *See, e.g., State v. Lopez,* 100 N.M. 291, 292, 669 P.2d 1086, 1087 (1983) (determining that where the defendant believed the substance he was attempting to sell was cocaine, he was guilty of attempting to traffic in a controlled substance, even though it was factually impossible to commit the crime because the substance was, in fact, not cocaine). "[W]hen a defendant does everything that is required to commit a crime but is frustrated due to the fact that completion is impossible, he can nevertheless be found guilty of attempt." *Id.*

{13} There was undisputed evidence at trial showing that Defendant believed DP–854 was validly in effect during the relevant period. A VBP employee testified that she transmitted the 1995 letter from NMED, with the mistaken expiration date, to Defendant in response to his request for documentation of the permit. One witness testified that Defendant told her that the permit ex-

pired in 2000. Defendant also informed the Texas Natural Resource Conservation Commission that waste from VBP was being transported to a New Mexico site pursuant to a permit. There was no evidence that Defendant thought or believed that the permit was not in effect.

{14} Defendant's entire defense below centered around the knowledge aspect of the charges—that Defendant did not know what VBP or Mr. Medina was doing. Defendant did not even argue to the jury the issue that the permit had expired. Defendant's attorney argued that Defendant believed the waste at issue in this case complied with DP–854. Thus, though it was impossible for Defendant to violate the terms of the permit because the permit had expired, he acted as though the permit was still in effect. Because the jury found him guilty of "everything that [was] required to commit the crime" including Defendant's belief that DP–854 was valid, Defendant was necessarily guilty of attempt to commit these offenses.

{15} We next determine that attempt to violate Section 74–6–10.2(A) is a lesser included offense of violating the statute. "Attempt to commit a felony consists of an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission." NMSA 1978, § 30–28–1 (1963). The crime of attempt to commit a felony requires the specific intent to commit the underlying felony. *State v. Hernandez*, 1998–NMCA–167, ¶ 16, 126 N.M. 377, 970 P.2d 149. Defendant was found guilty of committing the violations, meaning that he, in fact, was found guilty of completing all of the acts necessary to commit the violations, but failed only because he mistakenly believed the permit to be valid.

{16} In determining that attempt to violate the statute is a lesser included offense of violating the statute, we also look to *State v. Meadors*, 121 N.M. 38, 908 P.2d 731 (1995), to guide our analysis. Our Supreme Court adopted a "cognate approach" for determining whether an offense is a lesser included offense. *Id.* at 44, 908 P.2d at 737. The *Meadors* approach, used when the State requests instruction on a lesser included offense, has also been applied by this Court to

review a trial court's sua sponte convicting a defendant of a lesser offense. *See State v. Hernandez*, 1999–NMCA–105, ¶ 26, 127 N.M. 769, 987 P.2d 1156. In both instances our courts have determined that a defendant, over his or her objection, can be convicted of a lesser included offense that was not included in the charging instrument, but that complies with the *Meadors* doctrine. We see no reason to use a different approach here, in determining whether to remand for resentencing on the lesser charge after Defendant has been found guilty of the greater charge following a jury trial.

{17} The *Meadors* doctrine looks to the charging instrument to determine if the elements of the lesser included offense are encompassed in it (the strict elements approach) and also looks to the evidence adduced at trial to help interpret the applicability of those elements. 121 N.M. at 45, 908 P.2d at 738. "[A]n offense is a lesser-included offense only if the defendant cannot commit the greater offense in the manner described in the charging document without also committing the lesser offense." *Id.* Under this analysis, a defendant is provided notice of the offense he or she must defend against and given ample time to prepare a defense. *Id.* In *Meadors*, our Supreme Court found that the defendant could not have committed attempted murder by pouring gasoline on his victim and lighting him on fire without also having committed aggravated battery. *Id.* at 46, 908 P.2d at 739. Likewise, Defendant in this case could not have knowingly caused or knowingly allowed another to discharge a water contaminant without also attempting to do so in the event it turned out, as it did, that the permit he thought was in effect had expired. Thus, Defendant's notice of the statutory violations in the grand jury indictment necessarily included notice of attempt to violate the statute, and we determine that Defendant was not prejudiced by the failure to include attempt in the indictment or the State's failure to argue it at trial.

{18} Defendant argues that specific intent is an element of an attempt crime, *see* UJI 14–2801 NMRA 2003, and the jury was

never instructed to find that Defendant had to "intend to commit the crime of" knowingly causing or allowing another to discharge in violation of a permit or "intend to commit the crime of" knowingly causing or allowing another to fail to monitor, sample, or report as required by a permit. Under the *Meadors* cognate approach, the strict elements test advocated by Defendant is only the first step in the analysis. Using the complete approach, as discussed above, we determine that Defendant was necessarily found guilty of the lesser included offense of attempt. A charge of a completed crime logically includes a charge of an attempt to commit each of the crimes charged. *Commonwealth v. Gosselin*, 365 Mass. 116, 309 N.E.2d 884, 887 (1974); *State v. James*, 265 Neb. 243, 655 N.W.2d 891, 897–99 (2003); *State v. Lutheran*, 76 S.D. 561, 82 N.W.2d 507, 508 (1957); *see also In re Marlon C.*, 2003–NMCA–005, ¶ 12, 133 N.M. 142, 61 P.3d 851. In this case the jury found Defendant guilty of five offenses of "knowingly caus[ing], or knowingly allow[ing] another to discharge a water contaminant," and three offenses of "knowingly fail[ing] to monitor, sample, or report, or knowingly caus[ing] or allow[ing] another to fail to monitor, sample, or report." It follows, a fortiori, that the jury found that Defendant had the requisite intent to attempt to commit the offenses it found him guilty of knowingly causing. In addition, the jury was instructed that Defendant had to have acted intentionally when he committed the crime of knowingly violating the WQA. UJI 14–141 NMRA 2003.

{19} Moreover, our Supreme Court has determined that a retrial for failure to instruct on intent is not required if the facts assure that the result surely would be the same. *State v. Griffin*, 116 N.M. 689, 695, 866 P.2d 1156, 1162 (1993). Because we have determined that (1) attempt to violate the statute at issue is a lesser included offense, (2) there is sufficient evidence to convict Defendant of attempt to violate the statute, and (3) the jury necessarily found Defendant guilty of the attempt under the facts of this case, we determine that a retrial is not required because the result would surely be the same. *Cf. State v. Orosco*, 113 N.M. 780, 784, 833 P.2d 1146, 1150 (1992) (determining that

where there can be no dispute that the element was established, failure to instruct jury on that element does not offend principles of fundamental fairness and does not require reversal of conviction).

{20} We hold that, under the facts of this case, there is sufficient evidence to find Defendant guilty of attempt to commit the offenses for which the jury found him guilty, and we remand to the trial court for resentencing based on attempt to commit the violations of the statute.

### Remand for Sentencing

{21} Defendant relies on *State v. Haynie*, 116 N.M. 746, 867 P.2d 416 (1994), for his argument that this Court cannot remand for resentencing on attempt because the jury was not instructed on attempt. In *Haynie* our Supreme Court found that there was insufficient evidence to sustain the defendant's conviction for first degree murder because the element of endangering the lives of others was not proved, but remanded to the trial court for resentencing for second degree murder. *Id.* at 748, 867 P.2d at 418. The *Haynie* Court determined that the defendant conceded on appeal that the evidence supported second degree murder, he argued for it below, and the jury was instructed on second degree murder, making it appropriate to remand for resentencing instead of ordering a new trial. *Id.* at 747–48, 867 P.2d at 417–18. Defendant argues that because the jury was not instructed on attempt, we can have no assurance that the jury necessarily found each essential element of attempt. *See also United States v. Vasquez–Chan*, 978 F.2d 546, 554 (9th Cir.1992) (determining that for an appellate court to enter a judgment on a lesser offense, "the jury must have been explicitly instructed that it could find the defendant guilty of the lesser-included offense and must have been properly instructed on the elements of that offense"); *Ex parte Walls*, 711 So.2d 490, 498 (Ala.1997) (following acquittal for insufficient evidence on substantive charge, judgment cannot be entered on attempt when jury was not charged on that offense); *Collier v. State*, 999 S.W.2d 779, 782 (Tex.Crim.App.1999) (en banc) (determining that judgment cannot be

entered on lesser offense unless jury was instructed on that offense). We do not agree with the rationales of these cases under the circumstances of the case at bar, where the lesser offense was necessarily found by the jury in finding the defendant guilty of the greater offense. In addition, we are at a loss to understand why instruction on a lesser offense would even be relevant when a jury finds a defendant guilty of the greater offense and thus may not reach the lesser. *See* UJI 14–6012 NMRA 2003 (explaining procedure to jury in deliberating greater and lesser offenses); *cf. State v. Southerland,* 100 N.M. 591, 595, 673 P.2d 1324, 1328 (Ct.App. 1983) (stating that when a jury does not reach issue of lesser included offense, the general rule is that any error in lesser included offense instructions is harmless).

{22} *Haynie* stands for the proposition that "appellate courts have the authority to remand a case for entry of judgment on the lesser included offense and resentencing rather than retrial when the evidence does not support the offense for which the defendant was convicted but does support a lesser included offense." 116 N.M. at 748, 867 P.2d at 418. Our Supreme Court stated that "[t]he rationale for this holding is that there is no need to retry a defendant for a lesser included offense when the elements of the lesser offense necessarily were proven to a jury beyond a reasonable doubt in the course of convicting the defendant of the greater offense." *Id.* We have determined above that attempt to violate the statute is a lesser included offense of violating the statute under the facts of this case, and that the jury necessarily found Defendant guilty of attempt. Our determination here is not in conflict with *Haynie.*

{23} Moreover, the main rationale of the cases on which Defendant relies appears to us to espouse a sporting or gaming theory of justice that is inconsistent with New Mexico law. *Collier* explains the reason for its rule: Were it otherwise, "the state would have all the benefits and none of the risks of its trial strategy, while the accused would have all the risks and none of the protections." *Collier,* 999 S.W.2d at 782 (internal quotation marks and citations omitted). However, we

do not believe that risks, benefits, and strategies are the proper analysis in criminal cases. *Cf. County of Los Alamos v. Tapia,* 109 N.M. 736, 742, 790 P.2d 1017, 1023 (1990) (stating various definitions of the public's interest in the orderly administration of justice, including insuring that the guilty are punished after a fair trial); *State v. Maes,* 100 N.M. 78, 80–81, 665 P.2d 1169, 1171–72 (Ct.App. 1983) (indicating the public interest in the proper resolution of criminal cases despite the parties' concessions). In addition, we have long been committed to the rule that remedies should be tailored to the wrong suffered and should be based on a showing of particular prejudice. *See In re Jade G.,* 2001–NMCA–058, ¶ 29, 130 N.M. 687, 30 P.3d 376; *State v. Pedroncelli,* 97 N.M. 190, 192–93, 637 P.2d 1245, 1247–48 (Ct.App.1981).

■ {24} *Vasquez–Chan* and *Walls* explain that the rule seeks to put the parties in the same position on appeal as they would have been at trial insofar as retrial on the lesser offense would be barred if only the greater offense was submitted to the jury and if the defendant was acquitted of that offense. *Vasquez–Chan,* 978 F.2d at 554; *Walls,* 711 So.2d at 498. The basis of this rule is that a person may not be tried on a lesser offense once acquitted of the greater because of double jeopardy. *See Meadors,* 121 N.M. at 41, 908 P.2d at 734. However, in the case of an appeal, as opposed to the conclusion of a trial without appeal, there is no termination of the proceedings and no termination of jeopardy. *See Sattazahn v. Pennsylvania,* 537 U.S. 101, 113, 123 S.Ct. 732, 740, 154 L.Ed.2d 588 (2003).

■ {25} Thus, when a trial concludes with a defendant's being convicted of a greater offense, we believe that the applicable rule is as set forth in *Shields v. State,* 722 So.2d 584, 586–87 (Miss.1998) (relying on *Rutledge v. United States,* 517 U.S. 292, 306, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), in finding no federal impediment to an appellate court's directing the entry of judgment for a lesser included offense when finding insufficient evidence of the greater offense as long as (1) there is a failure of proof of one element of the greater offense, (2) the evidence sustains all the elements of the lesser offense, (3) the

lesser offense is included in the greater offense, and (4) there is no undue prejudice to the defendant). Applying this rule to the present case, we hold that all the elements of it are met.

{26} First, we have held that there was a failure of proof of the permit element of the greater offense. Second and third, the evidence sustains the elements of attempt, and attempt is a lesser included offense under the facts of this case. Finally, and most important, Defendant does not argue that his defense would have been any different had he also been specifically and expressly charged with attempt, thereby showing that the fourth *Rutledge* element is met. In fact, during the directed verdict motion, Defendant suggested that attempt was the more appropriate offense. Defendant was charged with violating Section 74–6–10.2(A)(1) and (4), he was on notice of the charges, he defended against the charges, and he was found guilty of the charges. We again note that, except as to the technical validity of the permit, Defendant does not challenge the sufficiency of the evidence on which the jury found him guilty. By defending against the greater charge on the basis of lack of knowledge of the workings of VBP and the Medina site and on the basis that he did not know that the type of sludge disposed was not allowed under the permit, Defendant necessarily defended against the lesser included charge of attempt under the facts of this case. We discern no reason to mandate a retrial on these facts.

## CONSTITUTIONALITY OF STATUTE

{27} Defendant argues that the statute underlying his convictions, which makes it a crime to knowingly "allow" another person to violate the statute, is impermissibly vague and violates his right to due process under the United States Constitution and the New Mexico Constitution. We review a challenge to the constitutionality of a statute de novo. *State v. Laguna*, 1999–NMCA–152, ¶ 24, 128 N.M. 345, 992 P.2d 896. Due process requires that a criminal statute be drafted in such a manner that it provides fair warning of the conduct sought to be proscribed, and so that the statute does

not encourage arbitrary or discriminatory enforcement. *State v. Luckie*, 120 N.M. 274, 276, 901 P.2d 205, 207 (Ct.App.1995). "A penal statute offends due process and is unconstitutionally vague if it fails to give a person of ordinary intelligence a reasonable opportunity to know what is being prohibited so that he or she may act accordingly." *Id.* A strong presumption of constitutionality underlies each statute, and Defendant has the burden to prove unconstitutionality beyond all reasonable doubt. *Laguna*, 1999–NMCA–152, ¶ 24, 128 N.M. 345, 992 P.2d 896. A claim of vagueness is analyzed according to the particular facts of each case. *Luckie*, 120 N.M. at 276, 901 P.2d at 207. "Defendant will not succeed if the statute clearly applied to his conduct." *Laguna*, 1999–NMCA–152, ¶ 24, 128 N.M. 345, 992 P.2d 896.

{28} Defendant contends that Section 74–6–10.2(B), which prohibits a person from allowing another person to violate the statute, is unconstitutionally vague because it does not specify what a potential defendant must do to prevent the conduct at issue. Defendant was convicted of five counts of knowingly causing or knowingly allowing another to discharge a water contaminant, contrary to Section 74–6–10.2(A)(1) and (B) and three counts of knowingly causing or allowing another to fail to monitor, sample, or report the requirements of a permit contrary to Section 74–6–10.2(A)(4) and (B). Defendant suggests that the "allows" clause does not provide reasonable notice of what he must do *not* to allow someone to discharge water contaminates, asking us if advising a client would be sufficient, or if he must threaten to report the client to the authorities, or even physically prevent the discharge. He makes the same argument regarding both sections of the statute pursuant to which he was convicted.

{29} However apt Defendant's hypothetical questions may be, he fails to tell us how this statute is vague according to the specific facts under which he was convicted. He points to no evidence that he produced at trial showing that he advised his client that improper contaminants were being dumped, that insufficient paper work was being filed, that he threatened to report his client to

NMED, that he physically tried to prevent the discharges, or that he filed the reports himself.

{30} The evidence shows that Defendant was hired as an environmental expert to help VBP correct some problems that resulted in notice of environmental violations received from the Texas Natural Resource Conservation Commission (TNRCC), and that VBP expected to have a continuing relationship with him in order to maintain compliance with environmental issues in the future. VBP notified Defendant of and shared with him all correspondence from the environmental regulatory agencies. Defendant was aware of DP–854 and possessed a copy of it. Defendant even informed TNRCC that VBP's sludge was being transported to an approved site in New Mexico, and that records were being kept pursuant to the permit requirements. There was ample evidence showing that the amount and type of waste being transported to the Medina site greatly exceeded the permit requirements, and that monitoring and record keeping for that site was incomplete. Defendant even eventually admitted to an Environmental Enforcement Officer from the New Mexico Attorney General's office that the rendering waste dumped at the Medina site was not included in DP–854. We think that a person of ordinary intelligence can determine that an environmental expert hired to solve environmental violations, with knowledge of the contents and requirements of DP–854, who knew VBP was not in compliance with DP–854, who took no action to comply with the permit, and who took no action to remedy the violations he knew to be occurring, would be on adequate notice that he "knowingly cause[d] or allow[ed] another person to violate" the WQA. Section 74–6–10.2(B).

{31} Defendant's vagueness challenge to the words "any person" and to the definition of "water contaminant" contained in the statute fails for the same reason. In this case there is no question about who "any person" might be. Defendant was convicted of knowingly allowing his client VBP and the landfill owner, Mr. Medina, to violate the statute. There is no question either about the contaminants at issue. As we discuss below,

there was ample evidence that the contaminants in question were toxic or carcinogenic, or both, and ample evidence showing that these particular contaminants altered the qualities of the water.

{32} The statute also contains a scienter requirement, meaning that the jury necessarily found that Defendant "knowingly" caused or allowed another to violate the statute. "A statute requiring the fact-finder to determine whether a defendant committed a knowing or willful violation is less likely to be found vague because the jury must determine scienter." *State v. Rowell*, 119 N.M. 710, 718, 895 P.2d 232, 240 (Ct.App.1995), *rev'd on other grounds*, 121 N.M. 111, 908 P.2d 1379 (1995). We hold that Section 74–6–10.2(B) is not unconstitutionally vague as applied.

{33} In light of the foregoing analysis, Defendant's reliance on *People v. Maness*, 191 Ill.2d 478, 247 Ill.Dec. 490, 732 N.E.2d 545 (2000), is unavailing. The statute at issue in *Maness* had a similar "allows" provision. *See id.* at 549. However, the defendant in *Maness* did take some steps to prevent the prohibited action, but the statute did not specify what exactly a person should do *not* to allow the prohibited acts. *Id.* at 549–50. Thus, under the specific facts presented, the Illinois Supreme Court determined that the defendant could not reasonably know what the statute required of her in order to avoid prosecution. *Id.* at 550. Such is not the case here, where Defendant did nothing to prevent or *not* allow the prohibited acts.

## JURY INSTRUCTIONS

{34} Defendant argues that the trial court erred in refusing to instruct the jury on the limitations to the WQA as enumerated in NMSA 1978, § 74–6–12 (1999). "[A] criminal defendant is entitled to an instruction as to any defense, provided the instruction has an evidentiary foundation and accurately states the law." *State v. Gaines*, 2001–NMSC–036, ¶ 6, 131 N.M. 347, 36 P.3d 438. We review de novo the trial court's refusal of Defendant's tendered jury instruction, viewing the evidence in the light most favorable to the giving of the requested instruction. *State v. Hill*, 2001–NMCA–094, ¶ 5, 131 N.M. 195, 34 P.3d 139.

■ {35} Defendant argues that the WQA excludes regulation "if the water pollution and its effects are confined entirely within the boundaries of property within which the water pollution occurs when the water does not combine with other waters." Section 74–6–12(C). He further agues that the jury should have decided whether he was exempt because of this statutory limitation. Defendant misinterprets the statute.

{36} Section 74–6–12(C) states:

The Water Quality Act does not authorize the commission to adopt any regulation with respect to any condition or quality of water if the water pollution and its effects are confined entirely within the boundaries of property within which the water pollution occurs when the water does not combine with other waters.

This section plainly places limitations on the Water Quality Commission from regulating under certain conditions. However, Defendant asked the trial court to instruct the jury that "[t]he Water Quality Act *does not apply* to any condition or quality of water if the water pollution and its effects are confined entirely within the boundaries of property within which the water pollution occurs when the water does not combine with other waters." (Emphasis added.) He was, in effect, asking the jury to determine that no violation occurred if no pollution actually occurred, which is not what the statute mandates. In fact, the statute mandates civil and criminal penalties for violating a requirement of the statute, of a regulation, or of a permit. *See* NMSA 1978, § 74–6–10 (1993); § 74–6–10.2. Nowhere does the statute require that actual pollution occur before a sanction or penalty is levied against a discharger.

■ {37} Furthermore, Defendant and his client had already submitted to the regulation of the Water Quality Commission which determined that a permit was required. The applicable regulation requires anyone who intends to make a water contaminant discharge that may affect ground water to notify NMED, which will then inform the applicant whether a discharge permit is required. 20.6.2.1201 NMAC. The applicant does not determine whether any limitations or exemptions apply. *See Kerr–McGee Nu-*

*clear Corp. v. N.M. Water Quality Control Comm'n,* 98 N.M. 240, 244, 647 P.2d 873, 877 (Ct.App.1982) (determining that the director of the agency makes a determination of whether or not a permit is required, not the potential discharger of contaminants). Upon notification that a discharge permit is required, a discharger must then apply for the permit pursuant to the conditions set forth in the regulation. 20.6.2.3106 NMAC. The determination that a permit was needed for the Medina site necessarily meant that no limitations or exemptions applied to it. Defendant and his client were then bound by the requirements of DP–854. *See* Section 74–6–5.

{38} The statute and the regulations provide for appeals of decisions regarding the conditions of a permit, pursuant to which the permitee could have availed himself. However, the issue at trial was not whether the Water Quality Commission or NMED had exceeded its authority in regulating the Medina site's discharges or whether or not actual pollution occurred. At issue was whether Defendant violated Section 74–6–10.2(A) and (B) and the conditions imposed by DP–854. Accordingly, we hold that the trial court did not err in refusing Defendant's proffered jury instructions because they did not accurately state the law.

## ADMISSION OF LAB REPORT

{39} Defendant argues that the trial court erred in admitting evidence of a lab report purporting to find salmonella in meat and bone meal that VBP produced. He argues that the report constitutes hearsay, for which the prosecution failed to establish an exception, and that its admission was highly prejudicial. The State argues that there was a sufficient foundation laid that met the requirements of Rule 11–803(F) NMRA 2003 as a business records exception to the hearsay rule. The State further argues that even if the admission of the lab report was error, it was harmless error because there was no reasonable possibility that the evidence contributed to Defendant's conviction. We review the trial court's evidentiary rulings for abuse of discretion. *State v. Woodward,* 121 N.M. 1, 4, 908 P.2d 231, 234 (1995). " 'An abuse of discretion occurs when the ruling is clearly against the logic and effect of the

facts and circumstances of the case.' " *Id.* (quoting *State v. Apodaca,* 118 N.M. 762, 770, 887 P.2d 756, 764 (1994)).

{40} At trial, the State sought to admit the lab report as evidence that the water that left the plant to be dumped at the landfill contained contaminants. The State contended that the lab report, prepared by Ralston Analytical Laboratories, was directly related to VBP's operations and the waste it generated. No one from the Ralston Laboratories testified about the report. The trial court held a hearing outside the presence of the jury in order to ascertain whether Natalie Jerome (Ms. Jerome), vice president of VBP and custodian of its business records, could establish an adequate foundation for the admission of this report, and whether the report was relevant and not too prejudicial. The trial court admitted the report under the business records exception, Rule 11–803(F).

{41} We need not decide whether the admission of the report was error, because even if it was error, the error was harmless. In order to determine that an error is harmless, we consider three factors: (1) whether there was substantial evidence to support the conviction without reference to the improperly admitted evidence, (2) whether there was such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear so minuscule that it could not have contributed to the conviction, and (3) whether there was substantial conflicting evidence to discredit the State's testimony. *State v. Duffy,* 1998–NMSC–014, ¶ 38, 126 N.M. 132, 967 P.2d 807.

{42} We note first that Defendant did not cross examine Ms. Jerome in the presence of the jury about the incidence of salmonella in the plant's wastewater, and that there was no evidence admitted to discredit the report. Indeed, Ms. Jerome admitted that salmonella was known to occur in meat and bone meal, it was not a significant issue for the plant, and the testing for salmonella was VBP's voluntary effort to improve their products. Our review of the trial transcript reveals no other mention of salmonella or this lab report.

{43} There was testimony from several witnesses about the contents of the water and the soil tested from the places VBP and Defendant were accused of dumping, but none mentioned the presence of salmonella. However, all of these witnesses testified as to the presence of other toxic chemicals. For instance, a chemist with the New Mexico Department of Health testified that in water samples that he tested, he found the presence of 4–methylphenol, 9–octadecenoic acid, cis–9–octadecenoic acid, and 2, 3–dihydroxypropyl, some of which are regulated by the EPA and considered toxic and suspected to be carcinogens. Another state chemist testified that he identified 1, 3–dichlorobenzene, 4–methylphenol, and long-chain organic acids, all in very high quantities in the soil he tested. A New Mexico Department of Public Safety crime lab technician testified that he found numerous animal hairs in the soil samples he tested. An NMED Surface Water Quality Inspector testified that he found the presence of ammonia in low and high concentrations in water tested at his laboratory, and very high concentrations of long-chain fatty acid organics, which would alter the chemical, physical, or biological qualities of water. He also found toxic phenols in his samples. Although some of the above-mentioned samples were taken from areas other than the landfill pursuant to which Defendant was convicted, we note that the State introduced all of this evidence to show that contaminants were being discharged, which was the core of the charges.

{44} In all, the State presented twenty-one witnesses and admitted over 100 exhibits. The only mention of salmonella or the Ralston Laboratories report was when the report was admitted into evidence through Ms. Jerome. This particular report was introduced approximately halfway through the lengthy introduction of nearly 60 documents that were admitted one by one through Ms. Jerome's testimony. We determine that the State introduced substantial evidence of contaminants to support the conviction in such a quantity that the report of the presence of salmonella was minuscule in comparison. We hold that any error in admitting this evidence was harmless.

## CONCLUSION

{45} We reverse Defendant's convictions and remand to the trial court for resentencing on the lesser included offense of attempting to commit the violations of the statute. We affirm as to all other issues.

{46} **IT IS SO ORDERED.**

I CONCUR: CELIA FOY CASTILLO, Judge.

RODERICK T. KENNEDY, Judge (concurring in part and dissenting in part).

KENNEDY, Judge (concurring in part and dissenting in part).

{47} There is a profound difference between reviewing a verdict and producing a verdict. I join the majority in reversing Defendant's conviction for insufficient evidence; it was impossible for him to commit crimes in violation of a discharge permit when no such permit legally existed. We correctly decided that the evidence was insufficient as a matter of law to sustain those convictions. A directed verdict on the charges would therefore have been proper.

{48} I respectfully dissent from the majority's accepting the invitation in the State's supplemental brief to now, in the face of our reversal of the substantive charge, convict on a "lesser" offense by adopting what the Mississippi Supreme Court, in its 5–4 majority opinion, called the "direct remand rule," *Shields*, 722 So.2d at 585, or what the federal system knows as the "*Allison* Rule." *Allison v. United States*, 409 F.2d 445, 451 (D.C.Cir. 1969); *see also Rutledge*, 517 U.S. at 306, 116 S.Ct. 1241. Under certain circumstances, this rule allows appellate courts to remand a case for imposition of conviction and sentencing upon a lesser included offense when a defendant's conviction of a greater offense is invalidated on appeal for insufficient evidence. In this case, it allows the State to inject an issue they consciously waived at trial into their appeal, and we deliver a conviction on a charge they did not seek. When we have found the evidence insufficient as a matter of law to support the jury's own verdict in the case, we should not be quick to render verdicts of our own on new and different charges.

{49} Defendant has rights to notice of the charges against him and trial of those charges to a jury under both the U.S. and New Mexico Constitutions. *See* U.S. Const. amend. VI; N.M. Const. art II, §§ 12, 14 and 18. He also has the right to have the facts developed and considered before a properly instructed fact-finding body, rather than having a fact-reviewing body interpose itself in the process of determining guilt of uncharged crimes.

{50} I am not convinced that attempt is a proper lesser included offense in this case. I am, however, unequivocally convinced that it is not a proper function of an appellate court to depart from reviewing the sufficiency of evidence supporting a conviction and impose the effect of that evidence on an entirely new crime that the State did not charge below and for which Defendant had no notice. The jurisdictions are split on this issue, and I believe that New Mexico should not follow cases like *Allison* and *Shields*, but rather we should follow cases such as *Collier*, 999 S.W.2d at 782 and *State v. Myers*, 158 Wis.2d 356, 461 N.W.2d 777, 782 (1990) (stating that when a defendant is convicted of an uncharged crime on appeal "the state is in effect asking the appellate court to give it the benefit of jury instructions it failed to request at trial").

**Where the State Requests no Jury Instruction on Attempt at Trial, They have Waived Prosecution of the Charge and Failed to Preserve it for Consideration on Appeal**

{51} Amending the indictment to charge attempt was only one option open to the State at trial that they chose not to exercise. The other was to seek an instruction to the jury on a lesser included offense. The State, having chosen not to pursue attempt by amendment to the indictment, further chose at trial not to pursue a charge of attempt by requesting that the jury be instructed on attempt to violate the permit.

{52} Defendant urges that we hold that he cannot be found guilty of attempt unless that charge has been properly submitted to the jury as a lesser included instruction.

The majority have declined to do so, stating that it would serve no purpose, because the evidence is unequivocal, and attempt is necessarily included as a part of the greater offense, and its elements are necessarily proven. The history of lesser included offenses, and their purpose in enabling the jury to distinguish between different charges where the evidence is weak shows the importance of this consideration.

**Jury Instructions Protect Fundamental Due Process Interests—They Are Not Incidental to "Gamesmanship"**

{53} The majority states that they are unable to understand "why instruction on a lesser offense" is "relevant when a jury finds a defendant guilty of the greater offense and thus may not reach the lesser." Majority opinion, ¶ 21. Simply put, guilt of the lesser offense might be the correct verdict for the case, as the majority hold, yet without an instruction on the lesser included offense, the jury convicts of a greater offense for which the evidence is insufficient to sustain the verdict. The issue involves the fact illustrated in *Haynie* that the jury had the opportunity to consider the merits of a greater charge against the lesser as they were instructed and reach a decision as to the relative merits of each. *Haynie*, 116 N.M. at 748, 867 P.2d at 418. Accordingly, they made their considered determination between the charges based on proof beyond a reasonable doubt.

{54} As stated in *Beck v. Alabama*, 447 U.S. 625, 634, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), "providing the jury with the 'third option' of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard." This protects the rights of the accused by allowing the jury to conform the verdict more accurately to the evidence than when presented with a single option for conviction. *Id.; see also State v. Andrade*, 1998–NMCA–031, ¶ 11, 124 N.M. 690, 954 P.2d 755 (stating that a lesser included offense instruction is a procedural safeguard for the defendant where a jury, confronted with an all-or-nothing choice, may wrongly convict of the greater crime because they believe the defendant committed a crime (the lesser included offense) and an acquittal would be unacceptable). *Beck* states this rationale quite clearly:

> True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory.

*Beck*, 447 U.S. at 634, 100 S.Ct. 2382 (internal quotation marks and citation omitted). Therefore there is no reason for this Court to go where no prosecutor went in this case.

**When the State Decided Not to Request a Lesser Included Instruction, it Precluded Our Review of a Lesser Included Offense**

{55} In this case, the State chose to take a "go for broke" position. For the State to appeal to us for help because they did not ask to have the jury consider attempt as a lesser offense would require the State to have tendered a correct instruction on attempt at trial. Rule 5–608(D) NMRA 2003. Having failed in that regard, they now ask us to create a lesser offense they did not seek from a guilty verdict reversed for insufficient evidence. *See Collier*, 999 S.W.2d at 782. "The state is asking us to rescue it from a trial strategy that went awry." *Id.* (quoting *Myers*, 461 N.W.2d at 782); *State v. Holley*, 604 A.2d 772, 776 (R.I.1992) (stating that remand for imposition of lesser included offense requires sufficient evidence to support conviction and instruction of jury on lesser included offense); *Shields*, 722 So.2d at 588 (Sullivan, J., dissenting).

{56} Lesser included offense instructions developed at common law as a tool of the State. They enabled the State to exercise its discretion to charge the greater offense yet preserve its ability to seek a conviction of the lesser included offense when, at trial, its proof of the greater offense proved nonexistent or weak. Instructing the jury on lesser included offenses developed at common law

to aid the prosecution "in cases in which the proof failed to establish some element of the crime charged." *Beck*, 447 U.S. at 633, 100 S.Ct. 2382.

{57} At trial, failing to request an instruction constitutes a waiver of the issue, and precludes review by the higher court. To preserve error concerning a failure to instruct on an issue, a correct written instruction must be tendered before the jury is instructed. *State v. Foster*, 1999–NMSC–007, ¶ 54, 126 N.M. 646, 974 P.2d 140. A charge of attempt could properly have been before the trial court but for the prosecution's failure to request that an instruction on attempt be given. "Under Rule 5–608, counsel must submit a proper instruction to preserve error only if no instruction is given on the issue in question on appeal." *Santillanes v. State*, 115 N.M. 215, 218, 849 P.2d 358, 361(1993). This was held in *Myers* to preclude considering a lesser included offense on appeal when no instruction was tendered. *See Myers*, 461 N.W.2d at 781–82.

{58} The purpose of Rule 5–608 "is to allow the court an opportunity to decide a question whose dimensions are not open to conjecture or after-the-fact interpretation." *Gallegos v. State*, 113 N.M. 339, 341, 825 P.2d 1249, 1251 (1992). New Mexico does not require the giving of a lesser included instruction without it being requested by a party. *State v. Garcia*, 46 N.M. 302, 306, 128 P.2d 459, 461 (1942) (stating that the court rule requiring tender of instruction or objection to a tendered instruction required supersedes case law that formerly required giving lesser included instructions). When a party does not tender a written jury instruction, the issue of whether such an instruction should have been allowed is not preserved for our review. *State v. Badoni*, 2003–NMCA–009, ¶ 7, 133 N.M. 257, 62 P.3d 348. The State was clearly alerted that an instruction on attempt might be proper. There is no reason for us to pursue an option consciously abandoned by the State. The majority opinion seems to regard Defendant's mention of "attempt" in his motion for a directed verdict as some sort of waiver by him that would allow us to consider the charge here. That is an incorrect view. At trial, Defendant could have accepted or objected to a lesser included offense instruction. If he did not object, the issue would be waived. The defense requested no consideration of a lesser included offense and now objects to our considering one on appeal.

{59} At one time, New Mexico required trial courts, in murder cases, to sua sponte give lesser included instructions if warranted by the evidence. *State v. Diaz*, 36 N.M. 284, 289, 13 P.2d 883, 887 (1932), *overruled in part by Garcia*, 46 N.M. at 306, 128 P.2d at 463. This is not indicative of anything consistent with "sporting" or "gaming." *Diaz* was overruled in part because of the adoption of a rule requiring all parties to request instructions on all theories of their case or face a finding of waiver if they did not. *Garcia*, 46 N.M. at 306, 128 P.2d at 463. Our Supreme Court chose the will of the parties over the imposition of policy forcing instruction on lesser included offenses.

{60} New Mexico courts have recognized that even when instructions on lesser offenses may otherwise be constitutionally mandated if requested, "the defendant is free to make strategic choices regarding the manner in which he will or will not avail himself of procedural safeguards afforded by the law, and he generally will be bound by those choices." *State v. Boeglin*, 105 N.M. 247, 251, 731 P.2d 943, 947 (1987). The State's entitlement to a lesser included instruction, where warranted, has been held by our Supreme Court to be no less than that of the defense. *Meadors*, 121 N.M. at 47, 908 P.2d at 740 (deciding that a defendant's right to a lesser included offense instruction is "at least as great" as the State's right to a lesser included offense instruction). There is no reason to hold the State to a lesser standard of behavior when they decided not to seek to have the jury be instructed on such an offense, particularly when they are entitled to by law, and were clearly alerted that attempt would "perhaps" be all that was left in the absence of a valid permit. The State now "cannot be heard to complain on appeal if [they have] gambled and lost." *Boeglin*, 105 N.M. at 251, 731 P.2d at 947. The majority opinion is no more than the "after-the-fact

interpretation" the rules seek to avoid. *Gallegos,* 113 N.M. at 341, 825 P.2d at 1251.

{61} If the State wants to have a lesser charge considered, it is the State's burden to seek consideration of such charges by the trial court if they want them or to bear the cost of not doing so. "If substantial justice has been done, parties must have duly taken and preserved exceptions in the lower court to the invasion of their legal right before we will notice them here." *Garcia,* 46 N.M. at 308, 128 P.2d at 462 (internal quotation marks and citation omitted). "[A] party to a criminal prosecution will not be heard to complain about the failure to charge a lesser included offense that is not alleged in the bill of indictment *unless* a timely written request to make such a charge is submitted to the trial court." *Prater v. State,* 273 Ga. 477, 545 S.E.2d 864, 868 (2001) (holding that where the prosecution requested, then abjured a lesser included instruction at trial, the State's failure to pursue an adequate instruction on attempt "waived all claims on appeal relative to the instructions's omission from the trial court's overall charge"). To so hold

> places no onerous burden on the State. It means only that, at the close of the evidence at trial, the State, no less than the accused, must take care to evaluate the sufficiency of the evidence to support the charge. If the evidence will support a lesser included offense instruction, then either the State or the accused may, and probably should, request one.

*Collier,* 999 S.W.2d at 782; *see People v. Najera,* 8 Cal.3d 504, 105 Cal.Rptr. 345, 503 P.2d 1353, 1358–59 (1972) (en banc); *People v. Spencer,* 22 Cal.App.3d 786, 99 Cal.Rptr. 681, 690–91 (1972).

{62} Choosing to seek an instruction on a lesser included offense has serious implications, including due process considerations. A defendant risks being convicted of a greater crime than he committed if the jury convicts on the greater offense, and the State risks the jury's (proper) acquittal if they follow their instruction and find that a requisite element is not proven. In this case, the defense argued that the permit was not legally extant, and the trial court gave the matter to the jury to decide as an issue of fact. The

defense properly sought to rely on the jury after it was instructed that the State's burden is to prove each element beyond a reasonable doubt.

{63} Here, the defense chose its path, asserting that the permit was not valid as a matter of law, and argued that theory to the trial court. Ultimately, this proved to be a proposition with which we agree. In so doing, however, the defense alerted the State to the possibility of a lesser included offense that the State—equally consciously—chose not to pursue. This is not a case like *Tapia,* cited by the majority, where the defendant waited until jeopardy attached before moving to suppress evidence. In fact, this case is more like what *Tapia* said would invoke double jeopardy protection for the defendant; the case where the State's desire in this case smacks of "honing its trial strategies and perfecting its evidence through successive attempts at conviction," as here on appeal the State seeks the result they now ask us to provide. *Tapia,* 109 N.M. at 744, 790 P.2d at 1025 (concluding that evidence is not insufficient when trial stopped because the defendant wrongly acted so as to secure exclusion of evidence; retrial permitted). Likewise, *Maes* is inapposite, standing for the proposition that the orderly administration of justice compels courts to evaluate stipulated dismissals of appeal for just result. *Maes,* 100 N.M. at 80–81, 665 P.2d at 1171–72 (concluding that the State's stipulation is not warranted; declining to dismiss appeal).

{64} The majority ignores the distinction between an appellate court finding evidence in the record sufficient to support a jury verdict, and the jury finding the evidence sufficient to prove guilt beyond a reasonable doubt. *Shields,* 722 So.2d at 588 (Sullivan, J., dissenting). Here, the jury had nothing to compare between the substantive crime and an attempt to commit it. The evidence on which the jury decided the case is judged by us to be insufficient to sustain the verdict. We are not in a position to say that there is no remaining defense to attempt.

{65} Both the prosecution and defense in this case are capable attorneys who know the burdens and benefits of their actions. *Myers* points out that for us to remand for entry of

conviction on the lesser included offense would encourage the State to go for broke as it did here, and then, if a verdict was overturned for insufficient evidence, seek a conviction in our Court. *See Myers,* 461 N.W.2d at 782–83.

{66} *State v. Garcia,* 114 N.M. 269, 276, 837 P.2d 862, 869 (1992) (opinion on rehearing), found that where the evidence supported inferences favoring both the greater and lesser offenses, it did not necessarily support either one beyond a reasonable doubt. The upshot was remanding for trial on two lesser included offenses because justice demanded full consideration of the charges. *Id.* The implication seems to be that a retrial may be "in the interests of justice" when the jury has not had an opportunity to consider all proper matters in a case. *Id.* Even *Allison,* on which the majority relies (via *Rutledge* ), allows for retrials if they are in the interest of justice. *Allison,* 409 F.2d at 452; *see also State v. Darkis,* 2000–NMCA–085, ¶¶ 12, 21, 129 N.M. 547, 10 P.3d 871 (remanding case for trial on lesser included offense when the defendant's instruction was refused by the trial court).

**Defendant Has a Due Process Right to Notice of the Offense with Which He Is Charged; the State Purposefully Chose Not to Charge Defendant with Attempt**

{67} By imposing a conviction on an uncharged crime of attempt and remanding for sentencing, we find Defendant guilty of a crime with which he was not charged. The defense mentioned the crime of attempt in their motion for a directed verdict on the permit-related counts, stating that: "[The State] [has] to prove there was a permit in effect, and there wasn't. There wasn't. If they had charged [Defendant] with attempt, *perhaps* they could stay in the case at this point, but they didn't." (Emphasis added.) The State thereafter requested no amendment of the indictment to include the charge as conforming to the evidence received at trial. *See* Rule 5–204(C) NMRA 2003 ("The court may at any time allow the indictment or information to be amended in respect to any variance to conform to the evidence."). During oral argument before this Court, and

later in the supplemental briefing we requested, the State pleaded that if we reverse the convictions, we should remand for resentencing on attempt. The State should have pursued the attempt option below when they had the opportunity.

{68} We consider it to be a "basic proposition that the function of a charge in a criminal case is to provide the defendant with notice of the charges against which the defendant must defend." *In re Marlon C.,* 2003–NMCA–005, ¶ 9, 133 N.M. 142, 61 P.3d 851. "[A] defendant in a criminal case is entitled to know with what he is charged and to be tried solely upon the charges against him." *State v. Crump,* 82 N.M. 487, 491, 484 P.2d 329, 333 (1971). That determination requires consideration of the specific elements of each offense in light of the evidence in the particular case. *State v. Johnson,* 103 N.M. 364, 371, 707 P.2d 1174, 1181 (Ct.App. 1985); *State v. Brecheisen,* 101 N.M. 38, 41, 677 P.2d 1074, 1077 (Ct.App.1984).

{69} "The *trial court* can properly consider a lesser-included offense if the evidence at trial would support a conviction for that offense." *Hernandez,* 1999–NMCA–105, ¶ 25, 127 N.M. 769, 987 P.2d 1156 (emphasis added). In *Haynie,* the case was remanded on appeal for sentencing on a lesser included offense, but the defendant had conceded at trial that he was guilty of that offense. *Haynie,* 116 N.M. at 747–48, 867 P.2d at 417–18. Here, the lesser included offense suggested by the majority is a different crime itself, and Defendant admits no guilt.

{70} For a defendant to be found guilty of attempt, the defendant must commit an overt act in furtherance of the commission of the greater offense. *See* § 30–28–1. That overt act is not part of the charging document here. The majority relies on *Gosselin,* 309 N.E.2d at 888, for the general proposition that a completed crime necessarily includes all the elements of an attempt, but this is not all of that case. *Gosselin* held that where the element of an overt act in furtherance of the greater crime was not included in the charging document, the defendant was not on notice for the element of attempt to commit the crime and could not be convicted of the lesser offense. *Id.*

{71} Defendant was not on notice in this case that if a permit did not exist he would be considered to have attempted to violate it. Nor was he on notice that discharging contaminants on the dates the State accused him of violating a permit were alternatively violations committed by acting illegally if there was no permit. Where a different unrelated crime is supported by evidence produced at trial, the trial court still cannot enter a conviction if the defendant is not on notice that he is charged with it. *State v. McGee*, 2002–NMCA–090, ¶¶ 7–19, 132 N.M. 537, 51 P.3d 1191. Neither should we. To find Defendant acting where no permit exists is to establish a different crime. We found the evidence to be insufficient, and reversed the conviction. The evidence should therefore be viewed as inherently suspect, suggesting that we should hesitate to act, perhaps particularly where we are most certain that the proof supports the elements of another crime. Without notice that there is a new crime to defend, Defendant's due process rights should preclude our finding a new crime of which to convict him.

**Legal—as Opposed to Factual—Impossibility Precludes Conviction for Attempt as a Lesser Included Offense in this Case; the Attempt Here is a Completed, Though Different, Crime**

{72} Without a permit in place, Defendant was not legally capable of committing the crimes of which he was convicted; his acts would constitute a different crime entirely. In *State v. Rael*, we held that whether a person was part of a criminal enterprise was a matter of statutory interpretation, which is a question of law, and "not subject to the substantial evidence standard of review." 1999–NMCA–068, ¶ 5, 127 N.M. 347, 981 P.2d 280. We review questions of law de novo. *Id.* Here, we determined, after analyzing the permitting requirements of the WQA to see if any inference could support the validity of an expired permit, that there was no legal permit in effect for Defendant to violate. "Interpretation of a statute is an issue of law, not a question of fact." *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

{73} The State maintained throughout trial and now before this Court that permit DP–854 was, even if expired, a "de facto" permit and that, "[n]o evidence indicated that DP–854 was considered to be invalid or defunct such that continued operations at the disposal site … were … discharges without a permit." The State obviously recognized the legal necessity of some form of permit to support a conviction under Section 74–6–10.2(A)(1) and (4) if the violation were to involve a permit violation. Although they argued that less than a currently valid permit was required to exist when the crime was committed, we rejected this position, holding that, "[w]e can determine no legal basis for considering that DP–854 was a valid permit at the time Defendant committed the acts for which he was convicted." Majority opinion, ¶ 10. Without the permit, the legal impossibility of committing the crime renders attempt an unchargeable crime.

{74} After reversing the convictions here, the majority went on, and, citing *Lopez*, 100 N.M. at 292, 669 P.2d at 1087, found that this case is "analogous to cases involving factual impossibilities" and then proceeded to construct a crime of attempted violation of a permit. Majority opinion, ¶ 12. In doing so, I believe the majority missed that what we properly determined was the *legal* impossibility of Defendant's *committing* the crime. *Lopez* made a distinction (that it later abandoned) between legal and factual impossibility in a case involving the defendant's sale of a substance he believed and represented to the buyer as cocaine, but was not. *Id.* I believe this case shows the problem with *Lopez's* holding that legal and factual impossibility are the same, as Justices Sosa and Federici pointed out in their dissents. *Id.* at 293, 669 P.2d at 1088 (Sosa and Federici, J.J., dissenting). This is particularly so since the legal preclusion of the existence of one element results in a legally separate violation of the statute with regard to a violation of Section 74–6–10.2(A)(1), with which Defendant was charged in other counts in the indictment in this case. With regard to Section 74–6–10.2(A)(4), failing to monitor, sample or report as required by a permit is simply legally impossible to commit absent "a

permit issued pursuant to a state or federal law or regulation."

{75} In *Lopez*, the determination was a factual one; Lopez, who did not know what he sold was other than cocaine, intended to traffic in cocaine, and offered for sale a substance as the illegal drug itself to a police informant. *Lopez*, 100 N.M. at 292, 669 P.2d at 1087. Our Supreme Court, in its majority opinion, held that this constituted an attempt, because factual impossibility precluded his actually selling cocaine. *Id.* The distinction of whether it was actually an illegal drug was eclipsed by the defendant's intent to sell what he believed and represented to buyers to be an illegal substance. *Id.*

{76} Where the crime is impossible because the completed act itself could not legally be criminal, an impossibility exists that stands outside the context of fact and the defendant's intent or belief. Here, it even constitutes a different crime. Violation of Section 74.6.10.2(A)(1) consists of committing the same acts—the only difference is whether done in violation of a permit or without one when a permit is required. Discharging a contaminant in the absence of a permit is a different violation, as the statute and Defendant's indictment in this case clearly show. This is then the case that the Court in *Lopez* did not address, namely where the crime's *commission* is impossible, not just its *completion.*

{77} Unlike in *Lopez*, the crimes charged here depend on the legal existence of a permit, not a factual question of chemical composition. The trial court wrongly allowed the jury to decide the legal issue of the existence of a permit as an issue of fact. We concluded that it did not exist as a matter of law. "[I]f the intended act is not criminal, there can be no criminal liability for an attempt to commit the crime." *State v. Lopez*, 81 N.M. 107, 108, 464 P.2d 23, 24 (Ct.App.1969), *overruled in part by State v. Ruffins*, 109 N.M. 668, 671, 789 P.2d 616, 619 (1990). With no permit in play, Defendant falls under the other crimes of which he was accused in other counts: illegal dumping and failing to monitor *without* a permit. Attempting to violate a permit makes no sense in this context.

## Remanding for Sentencing from the Appellate Court Violates Defendant's Rights to Due Process

{78} The majority's reliance on *Rutledge* to imply that the U.S. Supreme Court approves this policy is not compelling because the issue of appellate remand for imposition of conviction for the lesser included offense was handled only in dicta, with the Court finding that "[t]here is no need for us now to consider the precise limits on the appellate courts' power to substitute a conviction on a lesser offense for an erroneous conviction of a greater offense." *Rutledge*, 517 U.S. at 306, 116 S.Ct. 1241. As the majority notes, this practice of entering convictions for lesser included offenses is not universally accepted among the Federal Circuits. *See, e.g., United States v. Duran*, 141 F.3d 1186 (10th Cir.1998) (unpublished opinion) (recognizing that the practice is allowed in Tenth Circuit survey of other circuits' law); *Vasquez–Chan*, 978 F.2d at 554. As noted above, *Shields*, primarily relied upon by the majority, was a split decision. *Shields*, 722 So.2d at 588. The four dissenting justices in *Shields* joined Texas, Wisconsin, and Alabama in eschewing the practice of employing the *Allison* rule to enter judgments of conviction for lesser included offenses on appeal. *See Ex parte Roberts*, 662 So.2d 229, 232 (Ala.1995). The Wisconsin Supreme Court's unanimous opinion in *Myers*, 461 N.W.2d at 777 thus advances what I believe is a more persuasive analysis of this problem. Myers had been convicted of aggravated battery. The Wisconsin Court of Appeals reversed the conviction because the evidence was insufficient on the element of great bodily harm, but declined to remand the case for entry of judgment of conviction on a lesser included offense, and the State appealed. *Id.* at 778. The Supreme Court affirmed the refusal to enter a conviction in a case where the verdict had been reversed for insufficient evidence. *Id.* First, the court concluded that a verdict reversed for insufficient evidence was "too suspect a determination of guilt for an appellate court to use as the basis for ordering conviction of a lesser included offense for which no instruction had been submitted to

the jury." *Id.* at 780. Second, the Court concluded that "directing the entry of a judgment of conviction ... after reversal of the conviction for insufficient evidence does not comport with the underlying principles governing [jury instructions concerning] lesser included offenses and the role of the [trial] court vis-à-vis the parties and counsel in instructing juries." *Id.* Finally, it concluded (as did the Court of Appeals) that by requesting the modification of judgment, the State was changing its trial strategy and objecting on appeal to jury instructions to which it entered no objection at trial. *Id.*

## CONCLUSION

{79} The majority's chosen path is not so easily resolved by concentrating on evidence that is "necessarily found," nor charges that are "necessarily included." In many ways, the charges do not match up so congruently. The State caused its problem at trial by consciously, purposefully failing to preserve *their* right to have a lesser included offense considered. The State in fact had no inclination toward an attempt charge until they realized they faced reversal of the only convictions they had in the case when the "de facto" permit showed itself to be less than secure. We know an attempt was not considered as a charge below. From our perch, we cannot presume that the defense would not have a different strategy defending an attempt or other charge than the original charge. We cannot presume the way a jury would view all the evidence once it is submitted. We therefore should decline to allow the State to reverse its trial strategy by asking us to do on appeal what they did not seek to accomplish below. We consistently deny such relief to criminal defendants who did not seek lesser included instructions; there is no reason to accord the State more leeway. In light of the foregoing reasons, I conclude that a different path would have been more appropriate for this case.